SAMUEL T. CHAMPNEY, ADMINISTRATOR, &C., APPELLANT, *v.* FIDELIA BLANCHARD, RESPONDENT.

*Donatio Mortis Causa—Sufficiency of Execution—Mental Capacity—Evidence.*

The Defendant held in her possession certain moneys of her sister—the Plaintiff's intestate—for which she had delivered the following receipt:—

"Received, Brooklyn, May 21st, 1863, from J. Hegeman, twenty-eight hundred and three dollars and fifty cents. Also, June 1st, five hundred dollars from A. S. Foster, both of which sums are on account of, and belonging to, Mrs. Mary Champney, and are to be disposed of in any manner she may direct, or paid to her individually, together with whatsoever interest I may obtain for their use.

"F. BLANCHARD."

The intestate in the morning of the day of her decease, in contemplation of death, delivered the receipt to the Defendant, declaring that she gave it to her, mentioning the amount, and saying that she gave that money to her. The Defendant received and retained the receipt.

In an action by the administrator of the intestate, *Held*, that this was a valid gift mortis causa.

A general objection made, when a deposition is offered in evidence, " to all such parts thereof as involve the opinion of the witness on the mental capacity of the deceased" raises no question for review on appeal. The objection should have been to specific answers. The Court cannot be called upon to scrutinize the various answers, to discover whether there are any to which such an objection would apply, and the Appellant's exception in such case is unavailing.

THIS was an action by the Plaintiff, as administrator of Mary Champney, his deceased wife, to recover from the Defendant, who was a sister of the intestate, certain moneys alleged to have been loaned to her by Mrs. Champney a few months before her death.

The intestate gave up business as keeper of a boarding-house in Brooklyn, in April, 1863, and sold her furniture and plate, the former for about $2,800, received by one Hegeman, and the latter for $500, received by one Foster. In the same month of April she went to New Hampshire, in feeble health, and died there on the 26th of June of the same year.

On the 30th of April she wrote the daughter of Defendant as follows :

" Mr. Hegeman has orders to pay all moneys to Mrs. Blanchard. . . . . . . Say to mother I have no will (destroyed it in John B. Stewart's presence the day before I left) ; she knows, or can know, how the law runs. As I am not out of the clutches of the estate of Eli Merrill, I think she best put the money to Foster's, in her own name, at present. When she comes on here she can give me her notes. By that time you may look about and see if it is best to use it in saving mother's. Do as you think best. Mr. Foster's advice is good, and so is Mr. A. Robbin's—none better. So I leave it, and do not feel any anxiety at all."

On the 14th day of May Mrs. Champney addressed an order to Mr. Hegeman, directing him to pay to the Defendant whatever sum of money might be in his hands arising from the sale of her furniture, deducting his charges; and upon the same paper the Defendant (May 21st) wrote her receipt to Mr. Hegeman for $2,803.50, in full for proceeds of furniture, as above.

On the 1st of June she received $500 from Foster, and about the same time deposited both sums in her own name at the Atlantic Bank, Brooklyn, where they remained intact until after the death of Mrs. Champney. Shortly after the 1st of June the Defendant signed and forwarded to Mrs. Champney, by mail, the following paper :

" Received, Brooklyn, May 21st, 1863, from J. Hegeman, twenty-eight hundred and three dollars and fifty cents. Also, June 1st, five hundred dollars from A. S. Foster, both of which sums are on account of, and belonging to, Mrs. Mary Champney, and are to be disposed of in any manner she may direct, or paid to her individually, together with whatsoever interest I may obtain for their use.

      " $2,803 50
         500 00
         ————
     $3,303 50

                         " F. BLANCHARD."

There was no revenue stamp attached.

This paper was in the possession of Mrs. Champney on the day of her death, and on the morning of that day she handed it to the Defendant, at her bedside, saying that she gave that to her (the Defendant); that it was the avails of her furniture. She also mentioned the amount at the foot of the paper, saying she gave the Defendant that amount.

The Defendant at the same time received the paper from the hands of Mrs. Champney, and retained it. The disease of which Mrs. Champney died was complicated, and of long standing, and had reduced her to a condition of great debility. The physician who attended her during her last sickness testified that he did not think she had a sound mind during the last two days of her life; that he did not consider her deranged, but, in his opinion, the debility of her mind rendered her unfit to transact business. On the other hand, the testimony of her nurse, and of two other unprofessional witnesses, tended to show that, though greatly prostrated in bodily strength, her consciousness and intelligence were unimpaired. These witnesses were with her during the last days of her sickness, were all persons of mature age, and had known the Defendant for many years.

The testimony of other witnesses was taken on commission, and when the depositions were introduced, counsel for the Plaintiff objected to all such parts thereof as involved matter of opinion on the subject of mental capacity.

The referee found as facts proved, the handing of the paper to the Defendant by the deceased, and her accompanying declaration as narrated above; that it was in contemplation and expectancy of death, and with a view of giving the Defendant the money received by her as aforesaid, and that the deceased, at the time of the transaction, was of sound and disposing mind and memory, and of sufficient capacity to make a disposition of her property by will or gift. And he decided, as matter of law, that the transaction amounted to a valid gift to the Defendant, mortis causa, of the sums so received by her, or to an extinguishment of any claim upon her therefor, taking effect at the death of Mrs.

Champney, and that her administrator could not recover the same.

Judgment was entered on the report in favor of the Defendant, which was affirmed at the General Term, and from which the Plaintiff appeals to this Court.

*M. S. Bidwell* for Appellant.

. *J. M. Van Cott* for Respondent.

DWIGHT, J.—The referee has found as facts the intent of the decedent to give the moneys in question to the Defendant, her acts and declarations designed to effect such intention, and her capacity to make the gift; and each of these findings must be held conclusive, unless seen to be wholly unsupported by the evidence.

In respect to the last, it is claimed, on the part of the Appellant, that there is no legal and competent evidence to sustain it. It is said that the three witnesses relied upon by the Defendant to establish mental capacity were incompetent to give an opinion on that subject, and that, excluding their testimony, thus incompetent, there is left only the uncontradicted evidence of the physician, who testified that, in his opinion, the decedent was not of sound mind, nor of capacity to transact business during the last two days of her life.

But such is not the true state of the evidence on this question; the three witnesses referred to, do more than express opinions; they narrate the facts and occurrences of the day; they describe the appearance and condition, and relate the words of the deceased.

The narrative of the very transaction in question—the giving of the paper to the Defendant, and the accompanying words of the deceased—was evidence on this point which the referee had a right to consider, and which, had he been sitting as Judge at the Circuit, he could not have withheld from the jury. But they gave other evidence equally admissible. They say : "She distinguished persons about her as usual." "She appeared to comprehend what she said and did, and what was said and done by others." "Whatever she said was rational and clear, and if I

spoke to her, her answers were correct and clear?" "Her expressions were as intelligent as usual." "I did not observe any peculiarities in appearance, conduct, or conversation. She grew gradually weaker, but her mind held out wonderfully." And much more to the same effect.

These are not expressions of opinion, but statements of facts as they were observed by the witnesses, and they constituted evidence which must have been submitted to the jury, had there been one, and upon which the referee was warranted in finding competent mental capacity.

I do not examine the question raised upon the argument, whether persons, not experts in the phenomena of the mind, are competent to give an opinion on a question of mental capacity; because if there were any expressions of opinion in the testimony of these witnesses, which I doubt, the objection on the part of the Plaintiff was not specific enough to raise the question.

That objection was made before the deposition was read, and was to all such parts thereof as involved matter of opinion on the subject of mental capacity.

Such an objection cannot avail the party anywhere. The Court cannot be called upon to scrutinize the depositions of witnesses, and decide for the party to what particulars his objections shall apply.

In this case there was ample evidence of unquestioned competency to support the finding of the referee, that the intestate was of sufficient mental capacity to make a disposition of her property by will or gift.

There remains to be examined, therefore, only the referee's conclusion of law, "that such transaction amounted to a valid gift to the Defendant, mortis causa, of the sums received by her, as aforesaid, or to an extinguishment of any claim upon her therefor." It may be observed that the referee, neither in his finding nor elsewhere in his report, undertakes to decide whether the original transaction, by which the moneys came into the hands of the Defendant, was a loan or a deposit, and probably it was unnecessary to decide that question; but to my mind it is clear that there was no loan, and no debt at the time of the gift.

The letter of the intestate, of April 30th, clearly imports that the money was to be held by the Defendant as a deposit. It advised, for reasons growing out of some circumstances in Mrs. Champney's own affairs, how the deposit should be kept, and indicated a probable future use of the money, to be determined upon when the parties should come together; while the receipt or memorandum of the Defendant, which was accepted by the deceased, and retained by her till the day of her death, distinctly characterizes the fund as a deposit to be held by the Defendant subject to the order of the deceased, and to be accounted for with only such interest as the Defendant might receive for its use.

In this view of the case, the question is not presented whether a valid gift can be made of a debt from the creditor to the debtor, by delivery of the evidence, of the debt, without release or acquittance; though both upon principle and authority, I think, that question must be answered in the affirmative. But in this case the money of the decedent, of an amount ascertained by the memorandum then in her hands, was in the possession of the Defendant, held by her subject to the order of the decedent. Such being the case, what more was necessary or possible to effectuate a gift of this money to the Defendant than a delivery to her of the memorandum evidencing the amount and identity of the fund, accompanied by a clear and explicit declaration of the donor that she gave her those moneys.

Delivery of the subject-matter is, no doubt, essential to a gift, either inter vivos, or mortis causa; but the object of delivery is to give possession, and in this case possession was already complete in the donee. No further delivery was necessary, nor was it possible, without first returning the property to the donor, that it might be redelivered to the donee—an idle and unmeaning ceremony.

I am therefore of opinion that the objection that there was no delivery of the subject of the gift is not well taken, and this, to my mind, disposes of all the questions in the case.

Gifts, mortis causa, if not favored by the law, are at least amply

sustained by authority, in cases where the essential conditions are clearly fulfilled. These conditions are contemplation of death, clearly expressed intent to give in presenti, delivery of the subject-matter, and death of the donor without revocation of the gift—all of which seem to me to have been fulfilled in this case.

The objection that the paper delivered by the decedent to the Defendant was void for want of a stamp, is without pertinency, especially in the view of the case taken by me, viz., that this paper was not the evidence of a debt, but simply a memorandum, evidencing the amount and identity of the fund which was the subject of the gift.

The judgment of the Supreme Court should be affirmed.

MASON, J.—This suit was commenced by the Plaintiff as administrator of his deceased wife, Mary Champney, who died intestate, to recover of the Defendant certain moneys which came to her hands from the said Mary Champney, the wife of the Plaintiff, and who was also the sister of the Defendant. The Defendant claims these moneys as a donatio mortis causa from her sister. The cause was tried by a referee, who sustained the gift, and gave judgment for the Defendant for costs. The Plaintiff appealed to the General Term of the Supreme Court, where the judgment was affirmed; and the Plaintiff appealed therefrom to this Court. The referee before whom the cause was tried, found the following facts:

" Mary Champney, who was the wife of the Plaintiff, and the sister of the Defendant, kept a boarding-house in the city of Brooklyn, in her own name and on her own account, and was the owner of furniture and silver-ware used in said house. Early in the year 1863, and a few months before her death, she discontinued said business and sold said property, and shortly thereafter went to board at Fitzwilliam, in the State of New Hampshire. The proceeds of the sale of the silver-ware were then in the hands of a Mr. Foster; and the money arising from the sale of the other property was in the hands of Joseph Hegeman, by

whom, as auctioneer, the same had been sold. On the 30th of April, 1863, she wrote from Fitzwilliam to Defendant's daughter, stating that Mr. Hegeman had orders to pay all moneys to Defendant, and requesting the Defendant to put the money in Foster's hands in her (Defendant's) own name. On the 14th day of May, Mrs. Champney signed a written order, directing Mr. Hegeman to pay to Defendant whatever sum might be in his hands arising from the sale of her furniture, after deducting his charges. This order was sent by her to Defendant, and in pursuance thereof the Defendant, on the 20th of May, 1863, received from Hegeman the sum of $2,803.50, and gave him her receipt therefor. She also received the sum of $500 from Mr. Foster (in his hands as aforesaid) about the 1st of June, 1863. The Defendant deposited the two sums received by her, as aforesaid, in the bank to her own account, at the time of the receipt by her of said sums respectively; and said sums remained in the bank to her credit till after the death of Mrs. Champney, as hereinafter stated. On the 17th day of June, 1863, the Defendant executed a paper in the following words and figures, to wit :

"'Received, Brooklyn, May 21st, 1863, from J. Hegeman, twenty-eight hundred and three dollars and fifty cents. Also, June 1st, five hundred dollars from A. S. Foster, both of which sums are on account of and belonging to Mrs. Mary Champney, and are to be disposed of in any manner she may direct, or paid to her individually, together with whatsoever interest I may obtain for their use.

"'$2,803 50
500 00
_____
$3,303 50

" 'F. BLANCHARD.'

" And on the 18th day of June she caused the said paper to be mailed to Mrs. Champney, at Fitzwilliam, and it was received by Mrs. Champney, and retained by her till she disposed of it as hereinafter stated. The paper had no revenue stamp upon it.

Mrs. Champney being very ill, and supposed to be failing, the Defendant went to Fitzwilliam to visit her, arriving there about the —— day of June. Mrs. Champney continued to fail, and died on the evening of June 26th.

" On the morning of the day of her death, Mrs. Champney, in contemplation and expectation of death, and with a view to give to Defendant the amount received by her as aforesaid, handed her the paper, of which a copy is above set forth, saying that she gave that to her (the Defendant); that it was the avails of her furniture; she also mentioned the amount at the foot of the paper, saying she gave Defendant that amount. The Defendant at the same time received the paper from the hands of Mrs. Champney, and it was never returned to her.

" I find that Mrs. Champney, at the time of the transaction above stated, was of a sound and disposing mind and memory, having sufficient capacity to make a disposition of her property by will or gift.

" And I find and decide, as matter of law, that such transaction amounted to a valid gift to the Defendant, mortis causa, of the sums received by her as aforesaid, or to an extinguishment of any claim upon her therefor; the same taking effect upon the death of Mrs. Champney; that the Plaintiff, as her administrator, cannot therefore recover the same of the Defendant.

" I accordingly report that the Defendant is entitled to judgment dismissing the Plaintiff's complaint."

As none of the findings of the referee in this case are wanting in evidence to sustain them, we can only review his conclusions of law from the facts found. The rule is well settled at the present day that choses in action, or, at least, instruments creating a liability against a third party, held by the donor, are the subjects of a valid donatio mortis causa. And the American cases conclusively establish that the promissory note of a third person stands, in this respect, upon the same footing with a bond, and it matters not whether the note be payable to bearer or endorsed in blank, so that a legal title vests in the delivery, or whether it be payable to the donor only, and delivery vests but an equitable title in the

donee (Brown, Exr., *v.* Brown, 18 Conn. R. 410, 413; 16 Vermont R. 206; 21 id. 238; 24 Pick. R. 261, 264; 15 Maine R. 429; 18 id. 225; 21 id. 185; 27 id. 196; 1 Paige, 316, 318; 4 Cush. R. 87; 33 N. Y. R. 581.)

There seems to have been an attempt in the Courts of Westminster Hall to distinguish between a promissory note and a bond, in relation to the validity of the gift of a chose in action; but the Courts in this country hold that there is no difference—and there is none in reason or principle.

The gift of either is valid as a symbolical delivery of the *debt due on the note or bond;* and it is held that a note secured by a mortgage passes equally well by a gift and delivery mortis causa.

A bond or mortgage also may be transferred by mere delivery as a donatio mortis causa (Duffield *v.* Elwes, 1 Bligh, N. S. 497; Duffield *v.* Hicks, 1 Dow & Clark, 1).

The rule seems to be recognized as the same where the donee is the debtor, or bailee, or trustee of the donor, and that he stands upon the same footing as if the debt or duty were owing from a third person (Sims *v.* Walker, 8 Humphrey's R. 503, 505).

In the case of Richards *v.* Syms (Barnadiston's Ch. R. 90), which came before Lord Hardwicke in 1740, it was held that a bond and mortgage delivered by the mortgagee to the mortgagor, accompanied with the statement, " *Take back your writings, I freely forgive you the debt,*" was a valid gift of the moneys secured by the bond and mortgage to the mortgagor. In the case of Gardner *v.* Gardner and Others (22 Wend. R. 526), it was held that a bond for borrowed money to improve the separate estate of the wife could be discharged by a donatio mortis causa to the wife.

The case of Moore *v.* Darton (7 Eng. Law & Eq. 134) is quite like the present, and upon the most favorable view which can be taken of it for the Plaintiff, is an authority against the Plaintiff's action in this case, and will sustain this gift to the Defendant *as a valid donatio mortis causa.* In that case Miss Darton let Moore have £600, and he at the time signed and gave to her the following receipts:

" Received, 22d October, 1843, of Miss Darton, £500, to bear interest at £4 per cent., but not to be withdrawn at less than six months' notice.

" £500.

" (Signed)    WM. MOORE."

" Received, 22d Oct., 1843, of Miss Darton, for the use of Ann Dye, £100, to be paid to her at Miss Darton's decease, but the interest at £4 per cent. to be paid to Miss Darton.

" £100.

" (Signed)    WM. MOORE."

Underneath those receipts was written :

" I approve the above.

" BETTY DARTON."

In June, 1845, Miss Darton fell into a declining state of health. On the 18th of that month, being confined to bed, and being attended and assisted as lady's maid by one Ann Dye, she delivered those receipts to her, with directions to keep them until after her death, and then immediately upon her death, to give them to the said Wm. Moore, saying that her object was that she wished the debt or sum of £600 so due from the said Wm. Moore to her should be canceled. Ten days after this occurrence Miss Darton died, having been all the time dangerously ill. The day after her death the said Ann Dye gave the two receipts to Mr. Moore. Held, a valid donatio mortis causa, and that the delivery of the receipts, under these circumstances, was operative as a gift of the debt, and a discharge of all liability to the legal representatives of the estate of Miss Darton.

The case at bar is still stronger for the Defendant, as the receipt in this case does not show a loan, and an agreement to pay interest, but constitutes the Defendant a mere depositary of these moneys, to be disposed of as Mrs. Champney might direct, or to be paid to her with whatever interest Defendant might obtain for their use. There can scarcely be said to be any agreement on the part of the Defendant to execute any trust in regard to the moneys.

There can be no doubt, I think, that this was a valid gift, mortis causa, of these moneys in the Defendant's hands; and I cannot see that any importance should be attached to the fact that this receipt was not stamped with an internal revenue stamp. The gift of moneys in the Defendant's hands was just as effectual, whether the receipt needed a stamp or not, or whether it was with or without one.

This receipt having been given in evidence by the Defendant, without any objection raised as to the want of a stamp, and none having been raised upon the trial, and no exception filed even on this account in the Court below, the objection cannot be entertained here, as the objection might have been obviated had it been taken in the Court below. The judgment should be affirmed.

All affirm.

JOEL TIFFANY,
State Reporter.