# SUPREME COURT.

DELANO A. CHAMPLIN, as receiver of property, &c., agt. ELIZA SEEBER and CORA SEEBER, by guardian.

*Judgment against debtor — Deed by mother to daughter when void — Gift — donatio mortis causa — When party may testify in his own behalf as to conversation with deceased — Code of Procedure, § 399.*

Action by a receiver, in behalf of a judgment creditor, to set aside, as fraudulent, a conveyance from a mother to her daughter, and to collect out of the real estate so conveyed, a judgment recovered against the mother, which real estate the mother inherited from her father. The judgment was for a debt contracted by the mother for goods purchased by her. The father died intestate January 25, 1875. The conveyance was made after the debt upon which judgment was recovered was contracted. The consideration for the conveyance was one dollar. The mother and daughter were both allowed to testify at the trial in their own behalf. The mother testified: "I had a conversation with my father January ten or twelve, and before he was taken sick, on the subject of his property, in which he said he wished me to give to my daughter Cora my share of the property. What part he gave to me *he wanted me* to give it to Cora, if it was given to me, what part was to come to me; said nothing about a will at that time, nothing else was said; I said I was willing to convey it to her, and did do it." Cora, the daughter, testified that she was present when the conversation took place between her grandfather and her mother and corroborated her mother as to the conversation. Some of the goods were bought before the death of the grandfather. The defense is that the conveyance was made in pursuance of the direction of the grandfather; that the mother was an equitable trustee of her father and considered herself equitably bound to execute such trust according to the request and direction of the father:

*Held*, that, the mother and daughter were competent witnesses in their own behalf. They were not called to speak of transactions and communications had with a *deceased* person against his administrator,

executor, heir at law, next of kin, assignee, devisee or survivor of such deceased person (*Code, sec.* 399).

*Held,* also, that, as the conveyance was executed after the debt accrued upon which the judgment was recovered, and when the mother conveyed this property to her daughter, she had no other left and was insolvent, the conveyance was a mere voluntary one without a good, adequate, and valuable consideration therefor, and was void as against the plaintiff and the judgment creditor.

Nor could the conveyance be upheld as a *donatio mortis causa.* Such gifts must be consummated by a delivery and must clearly appear to have been made in contemplation of death and to be unrevoked.

*Herkimer Special Term, June,* 1877.

ACTION to collect a judgment recovered against Eliza Seeber out of real estate which she inherited from her father, Samuel W. Shepherd, deceased. He left four children and Eliza inherited an undivided one-fourth from her father who died intestate, January 25, 1875. The judgment was for a debt contracted by Eliza for goods purchased by her of M. J. Gartland, a merchant doing business in Little Falls, and the debt was assigned by him to Ezra Smith, 15th of December, 1875, who obtained judgment on it. Eliza was examined upon an order in supplementary proceedings, August 16, 1876, and there testified : " I owned this one-fourth interest in the real property my father left, up to the time I made the deed to Cora; I have no property now; don't claim to own any; I did not have any other property at time I transferred this property to Cora except what I transferred; all the consideration for the deed was ( $1 ) one dollar." The property is described in the complaint as that which was owned by S. W. Shepherd, deceased, and which descended by law to his four children one of whom was Eliza Seeber. The deed from Eliza to Cora was drawn by W. S. Parker, at Herkimer, and Eliza paid him two dollars and fifty cents for his services, and she testifies she did not know the value of the land conveyed. Before the referee, Cora testified she is the daughter of Eliza Seeber and grantee named in the deed ; that she was with her

mother at the time the deed was made and " I got the dollar that I gave her as consideration, of my uncle Irving; I got the dollar the day before; I told him I wanted to borrow some money of him; he asked me how much, I told him one dollar; I did not give him a note for the dollar; I have not made any deed of the property; I knew that my mother was purchasing the goods of Gartland at the time she got them; I knew that she had them charged, that she got them on credit; they were not paid for at the time that the deed was made that I know of; Smith did not see her until after the deed was made; my mother did not owe me any thing at the time this deed was made; I knew that this property *that mother sold to me* was all the property she owned." The deed from C. P. Bellinger to S. W. Shepherd was 26th November, 1832 and recites a consideration of $3,050. Monson and wife dated 15th April, 1859 to S. W. Shepherd, consideration $500. Deed of Eliza Seeber to Cora Seeber, dated 27th March, 1876, consideration one dollar and was recorded March 28, 1876, in book 106, page 499. Upon the trial of this action Eliza Seeber was called as a witness in her own behalf and testified, that she had a conversation with her father, January tenth or twelfth and before he was taken sick; that the conversation was on the subject of his property. " Q. What did he say he wanted done with your share of that estate? A. Give it to Cora, my daughter. Q. State what he said in respect to your share of the real estate? A. What part he gave to me *he wanted me* to give it to Cora if it was given to me, what part was to come to me; said nothing about a will at that time; nothing else said that I remember. Q. What did you say to that? A. Nothing; I was willing that she should have it all. Q. Did you say that to him? A. Yes, sir. Q. Said you was willing to convey it to her? A. Yes, sir. Q. And you were, and did do it? A. Yes, sir; father was sick fourteen or fifteen days. Q. He told you you *might give it to* Cora, did he? A. He told me I should." " Some of the goods were bought before father's death for which this judg-

ment was obtained." Cora Seeber was called and testified that she was fifteen years old June 15, 1877, and that she was present when the conversation took place between her grandfather and her mother. ". He said he would like to have mamma *give her part to me.* Q. What did your mother say in reply to it? A. *She said she would;* I went with mother to the lawyer's office in Herkimer when the deed was drawn; gave her one dollar which I borrowed of my uncle."

Judgment was recovered by Smith against Eliza Seeber, May 6, 1876, for fifty-nine dollars, and a transcript filed in Herkimer county clerk's office, June 10, 1876, and the judgment duly docketed. It was upon a debt arising prior to December 15, 1875. The defense is, that the conveyance was made in pursuance of the direction of the grandfather. That Eliza was an equitable trustee of her said father and considered herself equitably bound to execute such trust according to the request and direction of her said father. Plaintiff was appointed receiver duly in proceedings upon said judgment.

*E. E. Sheldon,* for plaintiff.

*George W. Smith,* for defendants.

HARDIN, *J.* — Eliza and Cora Seeber were competent witnesses in their own behalf. They were not called to speak of transactions and communications had with a deceased person against his administrator, executor, heir at law, next of kin, assignee, devisee or survivor of such deceased person ( *Code,* sec. 399; *Green* agt. *Edick,* 56 *N. Y.,* 613; *Lobdell* agt. *Lobdell,* 33 *How.,* 347; *Simmons* agt. *Sisson,* 26 *N. Y.,* 264; *Card* agt. *Card,* 39 *N. Y.,* 317). The objections of the plaintiff to such evidence are, therefore, overruled.

The death of S. W. Shepherd, intestate, vested in Eliza Seeber, his daughter, the fee to the one undivided fourth part of the real estate owned by him in his lifetime and described in the complaint. She held the legal title and was entitled to

the possession of the undivided fourth part of said real estate
from January 25, 1875, until she conveyed it away, March 27,
1876, at Herkimer, by her deed there executed to her daughter,
Cora Seeber, in consideration of one dollar only. That was
after the debt upon which Smith recovered judgment against
Eliza accrued. When she conveyed away that property she
had no other left and was insolvent and the one dollar was an
inadequate consideration. The conveyance apparently was a
mere voluntary one without a good and adequate and value-
able consideration therefor. The deed purports to be given for
a money consideration and no allusion is made in it to any
other consideration ( 2 *John. Ch.*, 47 ).

These facts would require the court to hold the deed void
as against the plaintiff and the judgment creditor represented
by him in as much as the debt was contracted prior to the con-
veyance and the judgment therein settled and establishes the
liability of Eliza Seeber for the debt. If the defendants were
to seek to uphold the conveyance to Cora as a *donation causa
mortis* from the grandfather to the granddaughter they would
be met by the principle that such gifts must be consummated
by a delivery and must clearly appear to have been made in
contemplation of death and to be unrevoked ( *Champney*
agt. *Blanchard*, 39 *N. Y.*, 111; 7 *Lans.*, 108 ; *Gray* agt.
*Barton*, 55 *N. Y.*, 71 ).

But the defendants seek to sustain the conveyance as in
pursuance of a conversation had between the grandfather and
his daughter 10th or 12th of January 1875, when, it is said
he requested his daughter Eliza to give her share of his estate
to her daughter Cora. Confessedly, after the death of Shep-
herd, Cora could not have compelled the execution of a con-
veyance to her by her mother Eliza. The parol agreement
would have been void as are all parol agreements as to real
estate. It could not be enforced as a legal trust, for the stat-
ute of uses and trusts condemns it. Having been executed it
is now insisted that it is valid between the parties. This
may be affirmed ; but how is it as to creditors of Eliza having

debts contracted before the conveyance and apparently upon the credit of the inheritance ( 2 *Johns. Ch.*, 47 )..

. The case of *Lowery* agt. *Smith* ( 16 *N. Y. Sup. Ct.*, 514 ) is cited by the learned counsel to sustain the defense. In that case it was held the evidence of the agreement made by the husband with his father-in-law in respect to taking title to the real estate to realize $600 therefrom and then to convey to his wife the daughter of the grantor should be received. So far the case is strictly an authority in point. The evidence in this case of the conversation between Eliza and her father was received in deference to that authority. But if we examine that case further we find that the deed, in legal effect, was a mortgage to secure $600 and that as soon as the $600 was realized out of it, the husband had no beneficial interest in the estate as he had agreed to convey the equity of redemption or what might remain after the $600 debt was enforced to his wife, the daughter of the grantor.

In this case the conversation of Shepherd amounts to a request that " What part he gave to me he wanted me (Eliza) to give to Cora " " if it was given to me." " What part was to come to me," *i. e.* that the daughter should, after the inheritance of it, subsequently give it to her daughter Cora. · Eliza assented to the request. The effect of the conversation was ( 1 ) that Eliza should inherit, should become the owner of the fee ( 2 ), that she would herself *give* it away to Cora.

Surely, that is much different from a direct gift by Shepherd to the granddaughter Cora. So far as rested upon the grandfather to give legal direction of his estate he vested the fee and beneficial ownership of one-fourth of his estate in his daughter Eliza. This result followed from his ownership, death intestate and without conveying away his property from his heirs-at-law. Of course it would have been competent for him to give by deed to his granddaughter or by will to devise it to her, but he did neither, he died intestate allowing the property to descend to and vest in the daughter Eliza, leaving only a naked request to his daughter " that she give

her share to her daughter Cora," Instead of being generous to the granddaughter he chose to be just to his daughter and asked her to be generous with her inheritance and give it to her daughter Cora.

Even with such a request she ought to be " just before she was generous." She kept the inheritance, contracted debt in the time she held the title to it, allowing her creditor to trust her in reliance upon her ability by reason of the property to pay and thus created an equitable lien in favor of the creditor; that debt ought to be paid before she gave her property to another. As we have before seen it was Eliza's property. The conversation with the grandfather contemplated that it should become hers by operation of the law of descents; the evidence of the conversation bears out this view. " What part he *gave* to me he *wanted* me *to give* to Cora if it was given to me; what part was to come to me; nothing else that I remember."

The purpose of the grandfather seemed to be that his daughter, after she got the property, should give it to Cora instead of any other person. But he deliberated, died and allowed it to descend and vest in law absolutely in his daughter Eliza.

This view of the evidence in this case distinguishes the case from *Lowery* agt. *Smith* (*supra*).

The defense is unavailing against the creditor. There must be a judgment declaring the deed by Eliza to Cora void and fraudulent as against the creditor's judgment and the judgment a lien upon the property described in the complaint.

Judgment ordered accordingly.