JAMES A. RIDDEN, RESPONDENT, *v.* JOSEPH H. THRALL, AS ADMINISTRATOR OF THE GOODS, ETC., OF CHARLES H. EDWARDS, DECEASED, AND GEORGE B. ABBOTT, LATE PUBLIC ADMINISTRATOR IN KINGS COUNTY, AS ADMINISTRATOR OF THE GOODS, ETC., OF CHARLES H. EDWARDS, DECEASED, APPELLANTS.

*Causa mortis gift — what constitutes — completed by a death which does not result from the cause anticipated.*

One Edwards, who was afflicted with hernia, when about to go to a hospital to submit to a surgical operation, took a tin box and stated to a personal friend (Ridden) that he was going to the hospital to have an operation performed, and if he did not return, he wished Ridden to have the box and its contents. Ridden received it and held it on his lap. Ridden's wife at this time entered the room and he said to her : "Sophia, Charles has given me this box as he is going to the hospital, and if he doesn't return, the box is for me to keep as my own; if he doesn't return." Edwards then arose and said: "Yes, Mrs. Ridden, if I never come back, this is for Jim." The key to the box was tied to the handle. The box was taken by Ridden's wife, who kept it. Edwards wept at the time and expressed much concern respecting the result of the contemplated operation, saying: "Oh, Jim, you don't know; I do not fear the operation, but I fear the results."

The next day he left Ridden's house, went to the hospital, where the surgical operation was performed three days thereafter, and he died some eleven days after the operation, of myocarditis, and not from the operation.

The tin box contained sixteen savings bank books, with credits aggregating $40,000. Subsequent to the death of Edwards, a letter was found, signed by him the day before the conversation above stated, as follows:

"FRIEND JIM.— Should I not survive from the effects of the operation about to be performed upon me at St. Luke's Hospital, this is my last will and request: * * * That you will take full charge of all my personal effects, of every kind, and to have and hold the same unto yourself, your heirs and assigns forever. You will find my papers and all the accounts in the box."

*Held*, that the foregoing transaction constituted a valid gift, *causa mortis*, and that Ridden was entitled to receive the amount of the deposits in the savings banks, the deposit books for which had been delivered to him in the tin box.

That the fact, that the immediate cause of Edward's death at the hospital was myocarditis, or a thinning of the muscular fibres of the heart, a cause of death which he did not anticipate and did not foresee when he made the gift, did not affect its validity; that his return was the only condition impressed upon the gift; and there was no reason why the court should impose another or any additional contingency.

Such a gift is only revoked by a revocation in the lifetime of the donor, or by his recovery from the illness or escape from the danger, in view at the time of the execution of the gift; or if death ensues from a sudden and unforeseen cause before such recovery or escape, the gift stands complete and the title vests absolutely in the donee.

APPEAL by the defendants from a judgment, entered in the office of the clerk of the county of Kings on the 20th day of June, 1889, for the sum of $2,208.54 deposited by one Charles H. Edwards in his lifetime with the Manhattan Savings Institution, which was adjudged to be the property of the plaintiff James A. Ridden.

*Carlisle Norwood, Jr.*, for the appellants.

*John H. Corwin* and *William D. Veeder*, for the respondent.

DYKMAN, J.:

This is an appeal from a judgment entered in favor of the plaintiff after a trial before a judge without a jury.

The action was commenced against the Manhattan Savings Institution for the recovery of $2,208.54 deposited in the bank by Charles H. Edwards, deceased, and when the present defendants interposed a claim to the fund as the administrators of Edwards, the savings bank obtained an order of interpleader, and the money was left in the bank subject to the judgment and order of the court.

The material facts are these: The plaintiff and Charles H. Edwards, deceased, were warm personal friends. They grew up together, and the friendship of their childhood continued unbroken in their manhood, and their relations were at all times very intimate. For a year and a half before his death Edwards lived with the plaintiff, and when he became afflicted with hernia, and was about to go to the hospital to submit to a surgical operation for that difficulty on the 1st day of October, 1888, he went down stairs in the

evening with a japanned tin box about eight inches long, six inches. wide and about four inches deep, with a brass handle on the top of the box. The plaintiff was in the room with Edwards, and the wife: was in the adjoining room with the door open between the two rooms. Edwards then said he was going to the hospital to have an operation performed, and if he did not return he wished the plaintiff to have the box and its contents, and then handed the box to the plaintiff, who received it and held it on his lap. Then the wife of the plaintiff. entered the room, and he said to her : " Sophia, Charles has given me this box, as he is going to the hospital; if he doesn't return, the box is for me to keep as my own if he doesn't return." Then Edwards arose and said : " Yes, Mrs. Ridden, if I never come back, this is for Jim." The key to the box was tied to the handle. The wife of the plaintiff then took the box and wrapped it up and put. it in a place of safety and kept it. Edwards wept at the time and expressed much concern respecting the result of the contemplated operation ; and when the plaintiff endeavored to cheer him and dissipate his fears, he said : " Oh, Jim, you don't know ; I don't fear the operation, but I fear the results." He evidently feared he would die from the operation.

He left the house of the plaintiff on the 2d day of October, 1888. The same day he was admitted to the hospital and never returned. He underwent the surgical operation on the fifth, and died on the sixteenth. Edwards was a single man, about forty-six years of age, and left no relatives nearer than first cousins, and of those, he had no knowledge, for he told the plaintiff, in his conversation the evening before he left for the hospital, that he had no relatives living that he knew of. According to the testimony of the house surgeon of the hospital where Edwards died, the cause of his death, as indicated by the autopsy, so far as could be determined, was myocarditis, or a. thinning of the muscular fibres of the heart. The testimony, however, is unsatisfactory, for the witness said, " technically," such was. the cause of his death, and how far that should qualify his testimony we cannot ascertain.

The tin box so delivered to the plaintiff by Edwards, contained sixteen savings bank books, with credits aggregating about $40,000, among which was the book issued by the Manhattan Savings. Institution with a credit of the amount claimed in this action. About.

one week after the death of Edwards, the wife of the plaintiff found a letter, written and signed by Edwards, under the cover of the bureau in his room, inclosed in an unsealed envelope, directed to the plaintiff, of which the following is a copy:

"BROOKLYN, *Sept.* 30, 1888.

"JAMES A. RIDDEN:

"FRIEND JIM. — Should I not survive from the effects of the operation about to be performed on me at St. Luke's Hospital, this is my last will and request, that you will take charge of my body and have it placed in my family plot in Greenwood Cemetery, and, also, that you will take full charge of all my personal effects of every kind and to have and hold the same unto yourself, your heirs and assigns forever. You will find my papers and all my accounts in the box.

"C. H. EDWARDS."

The uncontradicted testimony upon the trial established the facts as we have recited them, and the trial judge found and decided that they constituted a valid gift *causa mortis*, and that the plaintiff was entitled to the fund as the donee of the depositor. Gifts in prospect of death are natural; and it is a curious fact that the son of Ulysses made a valid and effectual gift, *causa mortis*, to Piræus of his treasure in view of the peril he was to encounter with the suitors. (Homer's Odyssey, Book 17.) Such gifts were well known and well regulated in the Roman civil law, and the common law on the subject was derived wholly from that system of jurisprudence. We have not, however, adopted all the formalities of the civil law; but our law views them as conditional gifts to be made in contemplation and expectation of death by the donor from some cause imminent and impending, or the conceived near approach of natural death; imminency of foreseen peril or apprehended approach of death from existing sickness from which there is no recovery. It is essential to the validity of such gifts that there shall be a present delivery in contemplation of death, and death without recovery from the ailment or illness from which the donor then suffers and which induced his apprehension of death. If the ailment of the donor furnishes him with an admonition of the near approach of death, and the gift be made in view of approaching dissolution, the law is so far satisfied; and if unrevoked in his lifetime, and he do not recover or escape

from the impending peril of death, the title of the donee becomes absolute and perfect at his death, and by relation, from the time of the actual delivery of the property. The foregoing propositions are sustained by the following authorities: Story's Equity Juris_ prudence (§.606); Kent's Commentaries (vol. 2, p. 444); *Grymes* v. *Hone* (49 N. Y., 17); *Irish* v. *Nutting* (47 Barb., 370). There is no reason why gifts should not be upheld as well as sales. Both are based upon the right of all people to do what they will with their own. Gifts are made without money and without price, from motives of affection or esteem, while grants are made for a consideration.

The sales throughout the world are made verbally, and perfected by physical transfer and acceptance of the subject, and gifts are made in the same way and consummated by delivery, and one method of transfer should be as free as the other. Devises and bequests, like donations, *mortis causa*, are but gifts to take effect absolutely only upon the death of the giver; and if they are to be surrounded with safeguards beyond those requisite in transactions between the living, let it be so, but let not the intention of donors be defeated.

In this case, Edwards intended to give the tin box and its contents, if he did not return from the hospital, to the plaintiff, and the evidence manifests the presence of every element necessary to constitute a gift in prospect of death. It never was revoked, and the donor never returned from the hospital and never recovered from the illness from which he was suffering at the time when he made the gift. Much is said by the appellant respecting the immediate cause of the death of Edwards at the hospital, and their contention is that he died of a disease and from a cause which he did not anticipate, and from a peril which he did not foresee when he made the gift; but there is no insistence that he recovered from the illness or survived the peril from which he apprehended his death; when he made the gift he was under the shadow of a great danger. He was about to submit to a surgical operation which he apprehended would be serious and might be fatal, and if he never returned from the hospital the property was to belong to the plaintiff. His return was the only condition impressed upon the gift, and there is no reason why the court should impose another or any additional contingency.

While there are expressions in book and opinions of judges, considered separately, favor the contention of the appellants, yet there are as many which look the other way. All sorts of views have been expressed by judges upon the subject of gifts *causa mortis*, and they are incapable of reconciliation. The assertion is often found in books, that the donor must die of the ailment or perils in view when the gift was made, and the expression is sufficiently accurate, for if the donor recover or escape from the impending peril, the gift is thereby defeated, not because death did not ensue from the illness or peril in view, but because it did not result at all. If a person in the last stages of a fatal disease made a gift in expectation of death therefrom, and died in a few days from heart failure without having recovered from the illness, the gift would be valid, because the revocation depended upon the recovery of the giver, and that event never happened.

In this case, if Edwards had been prostrated with a malignant disease from which he expected to die, and made the gift he did in prospect of death therefrom, and then died of myocarditis in ten days, and before he recovered from the disease which prompted the donation, the gift would be complete. The gift was only ambulatory and incomplete during his lifetime and in case he recovered from his illness.

Our view is, that such a gift is only defeated by a revocation in the lifetime of the donor or recovery from the illness or escape from the danger in view at the time of the execution of the gift; and if death intervenes from a sudden and unforeseen cause, before such recovery or escape, the gift stands complete and the title vests absolutely in the donee. A different conclusion would defeat the intention of the donor, which the law is careful to execute. The essential conditions of a gift, *causa mortis*, are contemplation of death, clearly expressed, intention to make a present gift and a delivery of the subject-matter thereof. A delivery of the bank-book, which was the evidence of the claim against the bank, and the death of the donor without a revocation of the gift and without a recovery or escape from the dreaded peril, were sufficient to vest the fund in question in the plaintiff. (*Champney* v. *Blanchard*, 39 N. Y., 11; *Westerlo* v. *De Witt*, 36 id., 340.)

The judgment appealed from should be affirmed, with costs.

BARNARD, P. J., concurred; PRATT, J., not sitting.

Judgment affirmed, with costs.