enough to permit the witness to give in answer thereto any information which the mother had given to him, as well as any which he might have obtained solely from an inspection of the child.

We think that the ruling excepted to was correct, and that the judgment and order should be affirmed, with costs. All concur.

---

(99 App. Div. 76.)

## O'BRIEN v. ELMIRA SAV. BANK.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. GIFT CAUSA MORTIS—ESSENTIALS.

The essential elements to constitute a gift causa mortis are that it must have been made in contemplation of impending death by a clearly expressed intention to give in præsenti, that the subject-matter must have been delivered, and that the donor must have died from the ailment or peril without revocation of the gift.

2. BANKS—SAVINGS DEPOSIT—TRANSFER OF DEPOSIT.

Where a depositor in a savings bank sent the bank a writing requesting that another person be allowed to sign the signature book, and that the bank change the account so that the depositor or the other might draw the money, and the request was complied with, unless there had been a gift of the money to the other, payment of the deposit to him on presentation of the book by the bank, with knowledge of the depositor's death, was no protection to the bank as against his estate, notwithstanding its rule that payments made to persons producing a passbook should be deemed a valid payment.

3. GIFT CAUSA MORTIS—EVIDENCE.

Evidence *held* to show a valid gift causa mortis of a savings bank deposit.

Parker, P. J., dissenting.

Appeal from Special Term, Chemung County.

Action by John C. O'Brien, as administrator of the goods, etc., of De Witt Ames, deceased, against the Elmira Savings Bank. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The action is brought to recover for moneys claimed by the plaintiff to have been deposited in the defendant bank by his intestate, De Witt Ames, who died on the 17th day of April, 1902. On the 7th day of April, 1902, while said De Witt Ames was ill with typhoid fever, and apprehended that he would not recover therefrom, and while he had on deposit with the defendant bank the sum of $584.72, and held its passbook containing a credit to him therefor, he executed an instrument of which the following is a copy:

"Elmira, N. Y., April 7, 1902.

"The Elmira Savings Bank, Elmira, N. Y.—Gentlemen: Please let Mrs. Margaret Peckham sign the signature book and change my account so that she or myself can draw the money on deposit in your bank.

"Yours very truly,                De Witt Ames.

"Witness:

"Mrs. D. F. Murphy.

"Daniel F. Murphy."

—And delivered the same, with the said passbook, to Margaret Peckham, the person mentioned therein, who on the same day delivered such instrument and passbook to the defendant, At the time of such delivery by her to the defendant she signed the signature book of the defendant with the word "or" between the name De Witt Ames and her name, and the defendant changed the said passbook to read "De Witt Ames or Mrs. Margaret Peckham, Cr.," and also changed its ledger to read in the same way. De Witt Ames and said Margaret Peckham were engaged to be married, and intended to be married on

the 20th day of April, 1902, and she also nursed him during his last illness. At the time of the delivery and execution of said instrument on April 7, 1902, said De Witt Ames declared to the subscribing witnesses thereto that, if anything happened to him, he wanted Margaret Peckham to have the money he had in defendant's bank. Such passbook was in the possession of said Margaret Peckham at the time of the execution and delivery of such instrument of April 7, 1902, and it was kept in the drawer of a desk belonging to said Margaret Peckham, in which drawer said De Witt Ames kept his papers, and to which both Ames and said Margaret Peckham had keys and access. After the presentation of the instrument of April 7, 1902, and said passbook to defendant, and after the changes had been made by the defendant in said signature book and in said passbook and ledger, said Margaret Peckham took said passbook, and placed the same in said drawer, and it remained there until after the death of said Ames. After the death of said Ames, the defendant, with knowledge of such death, paid to Margaret Peckham, upon the delivery of such passbook to it, all the moneys credited thereon. The plaintiff thereafter demanded of the defendant the said passbook and moneys, which demand the defendant refused. The court, on the trial, found the facts substantially as above set forth, and held that the deceased, De Witt Ames, made a valid gift causa mortis of the said deposit in said defendant's bank to Margaret Peckham, and granted judgment dismissing the complaint. From such judgment this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Mortimer L. Sullivan, for appellant.
E. G. Heredeen, for respondent.

CHESTER, J. The legality of the judgment appealed from depends upon the correctness of the decision of the trial court that Ames made a valid gift causa mortis to Mrs. Peckham of the moneys in question. She is not a party to the action, and the defendant bank has paid the money to her upon her production and presentation to it of the passbook in accordance with its rule requiring such production, and providing that "all payments made to persons producing a passbook shall be deemed a good and valid payment to the depositors, respectively, and shall discharge the bank from any further liability." If the money, however, in fact belonged to the estate of Ames, and not to Mrs. Peckham, who produced the book and drew the money after his death, the bank, having knowledge of such death when it paid the money to her, would not be protected by its rule. If, on the other hand, there was a valid gift causa mortis made by Ames to Mrs. Peckham, the money did not belong to the estate of Ames, and the judgment dismissing the complaint of his administrator suing therefor was correct. The essential elements to constitute such a gift are that it must have been made in contemplation of the donor's impending death by a clearly expressed intention to give in præsenti. The subject-matter of the gift must have been delivered and the donor must have died from the existing ailment or peril without revocation of the gift. Champney v. Blanchard, 39 N. Y. 111; Grymes v. Hone, 49 N. Y. 17, 10 Am. Rep. 313; Ridden v. Thrall, 125 N. Y. 572, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758. There is no question in the case that Ames died from an ailment with which he was affected when it is alleged he made the gift. He had typhoid fever at the time. He feared he would not recover therefrom, and he died of that disease 10 days thereafter. An examination of the evidence satisfies me that it is suf-

ficient to clearly show not only that Ames intended to give the moneys to Mrs. Peckham, but to show the delivery of the passbook to her. The defendant had the evidence of Daniel F. Murphy and his wife, who were disinterested persons, and who, at his request, signed the paper executed by Ames on April 7th, as witnesses. Their testimony shows that they were sent for by Ames for the purpose of witnessing the instrument; that he inquired whether it was necessary to have a notary public, and was assured that two witnesses were sufficient. Murphy testified:

"When we went in, my wife spoke to Mr. Ames, and asked what he wanted of her, and he said he had some money in the bank, and he wanted to let Maggie [Mrs. Peckham] have it if anything happened to him; and then he got up—he sat up in the bed—and the paper was put down there, * * * and he sat up like that and signed it. * * * He said he would have to have a run of typhoid fever, and he said he was afraid that he wouldn't get up again."

Mrs. Murphy corroborated this testimony. She testified that Ames said at the time: "I have a little money over in the bank, * * * and I want her [Mrs. Peckham] to have it in case anything should happen to me;" that he then signed the paper in question, and, "after signing it, he handed it back to Maggie." The evidence in this respect was also corroborated to some extent by that of the mother and the sister of Mrs. Peckham. All this evidence clearly shows that Ames intended to give the money to Mrs. Peckham in case he died from the dangerous disease from which he was then suffering, and that his purpose in signing the request to the bank which he did was to effectuate such intent.

The evidence also shows that the paper signed by Ames and the passbook were delivered to Mrs. Peckham, who on the same day took them to the defendant bank, where she signed its signature book, and where the defendant changed its ledger account and the passbook to read "The Elmira Savings Bank, Dr., to De Witt Ames or Mrs. Margaret Peckham, Cr." The message that Mrs. Peckham took to the bank from Ames, as testified to by the cashier, was that "Ames wanted to know how to fix it so she could draw the money in case he should die." The cashier further testified: "I drew that instrument [the request referred to] in accordance with instructions received by me. I drew it to comply with those instructions as I understood them." It is thus evident that the purpose of the bank was to so change the account and passbook as to give effect to the intent of Ames to let Mrs. Peckham have the money in case he died.

All this repels the idea that the object of Ames in doing what he did and in having the changes made in the account was to create an agency in Mrs. Peckham to draw the money for his benefit during his life. Where the intent to make a gift appears so clearly as it does here, it is needless to examine the numerous authorities where no such intent appears as to the effect of a joint credit such as was shown in this account after it was changed. The evidence shows also that the passbook was delivered by Ames to Mrs. Peckham, who took it to the bank to procure the changes to be made, and that on her return from the bank she put it in the drawer of a desk belonging to her, where it remained

until after he died.   The fact that he kept his papers in this drawer, and had a key and access thereto, is not of much moment in view of the facts that she also had a key and access thereto, and that he had delivered the book to her when she took it to the bank for the purpose of making effectual his intention of giving her the money.   It is apparent that the book was under her control by his assent all the time after it was given to her by him.   Such a delivery, accompanied by the changes he had authorized to be made in the account, was a good symbolical delivery of the moneys represented by the book.   14 Am. & Eng. Enc. of Law (2d Ed.) 1059, 1060.   When, in addition to the facts already mentioned, which, in my opinion, are quite sufficient to sustain the judgment, it also appears that Ames and Mrs. Peckham were engaged to be married;   that he lived with her in the family of her mother;   that she nursed him in his last sickness;   that the time for their marriage had been fixed, and was near at hand;   and that they had rented a house, and fixed the date upon which they were to take possession—the judgment appears to me to be clearly founded upon strong and satisfactory evidence, and such evidence as, under the authorities, is required to support a gift causa mortis.   Depuy v. Stevens, 37 App. Div. 289, 55 N. Y. Supp. 810.

The judgment should be affirmed, with costs.   All concur except PARKER, P. J., who dissents.   CHASE, J., concurs in result only.