DELIA O'CONNELL, Plaintiff, v. BANK FOR SAVINGS and NORA KELLY and KATHERINE KELLY, Administratrices, Defendants.

(Supreme Court, New York Special Term, March, 1918.)

Gifts — action to establish a gift causa mortis — evidence — pleading — savings banks — dismissal of complaint.

   The evidence in an action to establish a gift *causa mortis* of savings bank-books delivered by decedent to plaintiff, his sister in law, for safe keeping just before he was taken to a hospital where he died from the effects of a surgical operation of neither an unusual nor perilous nature, considered, and *held,* that the alleged gift was not made in contemplation of death and the complaint should be dismissed.

ACTION to establish a gift *causa mortis.*

Patrick J. McDonald, for plaintiff.

Thomas G. Durkan, for defendant administratrices.

Cadwalader, Wickersham & Taft, for Bank for Savings.

Cohalan, J.   Action to establish a gift *causa mortis*. The decedent was unmarried and when he died intestate on the 7th day of January, 1916, he left him surviving a brother and sister in this country; three sisters and two brothers, all residing in Ireland, and several nieces and nephews, the children of deceased sisters residing in this country.   One of the sisters living in Ireland is a mute, and had been an object of favor and of bounty on the part of the decedent.   The plaintiff is a sister-in-law of the decedent.   She asserts that about a week prior to his death the decedent called upon her in her home; that in anticipation of death he gave her two savings bank-books; that he thereafter entered Bellevue Hospital and died from the effects of a surgical operation for the removal of varicose veins. Two actions were instituted in this court on behalf of the plaintiff against, respectively, the administratrices of his estate and the Emigrant's Industrial Savings Bank and the Bank for Savings.   The second suit against the Bank for Savings has been submitted to this court for decision.   The testimony shows that the decedent had accumulated an estate of about $10,000; that he was a man of excellent habits, of industry and of thrift.   He was powerfully built, always enjoyed good health, save that he had suffered from varicose veins.   On December 30, 1915, he was advised to go to Bellevue Hospital for an operation to relieve his leg difficulty, and on January 7, 1916, he died from the effects of the operation.   It is the plaintiff's claim that the decedent on the day he entered the hospital, in anticipation of death, gave her his pass-books and the indebtedness represented thereby, '' upon the condition that if the said Jerry O'Connell should not die in said hospital, but should he recover from said illness and operation and return alive, that the said gift should be void and ineffectual.''   The proof required to establish a gift *causa mortis* must be strong and

convincing. As there is danger of fraud in cases of this kind, the transaction is viewed by the courts with care and scrutiny. In the case of *O'Brien* v. *Elmira Savings Bank,* 99 App. Div. 76, the rule was stated as follows: " The essential elements to constitute such a gift are that it must have been made in contemplation of the donor's impending death, by a clearly expressed intention to give *in præsenti;* the subject matter of the gift must have been delivered and the donor must have died from the existing ailment or peril without revocation of the gift.'' *Champney* v. *Blanchard,* 39 N. Y. 111; *Grymes* v. *Hone,* 49 id. 17; *Ridden* v. *Thrall,* 125 id. 572. The evidence adduced herein does not satisfactorily show that there was any immediate apprehension by the decedent of his death. The witnesses to the transaction were the plaintiff's infant daughter, and a friend, one Catherine Griffen, the latter of whom had never seen the decedent prior to the time of the alleged gift. On the day when the alleged gift was said to have been made the plaintiff was in the kitchen of her home. The testimony of her witnesses is that the decedent came there and during the interview remained standing for some time; that he showed no fatigue nor did he rest himself. All of the witnesses declared that at that time his appearance did not indicate that he was suffering from any illness. The examining physician testified that he had advised the operation for varicose veins, but did not make any further examination of the patient. In fact, the physician testified in effect that the decedent was in good physical condition, and the only fear the decedent had was in respect to the operation, and not as to the result of the same. The physician who performed the operation did not appear herein and the hospital physician was unable to state the actual cause of the decedent's death. The decedent was on intimate terms with his sister and other relatives in this country, and they

were not informed of his illness. If he were in grave danger of death, it is reasonable to assume that this announcement would have been made to them. I am satisfied that the decedent went to Bellevue Hospital to be cured and not to die. He was not informed that he was to undergo a dangerous operation, nor is such an operation of an unusual or of a perilous nature. That the decedent left the bank-books in his brother's home for safe-keeping in unquestioned, but that by that act he intended to exclude his brothers and sisters from a share in this property, by giving it to a stranger to his blood, is unreasonable. I am of the opinion that the alleged gift was not made in contemplation of immediate death, and the complaint is dismissed.

Judgment accordingly.