ERASTUS S. PROSSER, Respondent, *v.* THE FIRST NATIONAL
BANK of BUFFALO *et al.*, Appellants.

*Court of Appeals, October 4,* 1887.

1. *Appeal. Order of reversal.*—Where the order of reversal by the
general term does not specify that the reversal was upon questions
of fact, its justification must be found in some error of law re-
vealed by the record.

See note at end of case.

2. *Same. Finding of trial court.*—The finding of the trial court does
not present any error of law unless it is unsupported by any
evidence, or is against the evidence. Such finding, when not dis-
turbed by the general term, concludes the court of appeals, if there
is any evidence upon which it can properly be based.

3. *Corporations. Officers.*—Where the president of a bank personally
purchases shares of stock and takes, without either actual or im-
plied authority to do so, the funds of the bank to pay therefor, he
commits a breach of trust, and the bank can rely for indemnity
entirely upon him and hold him as its debtor for the amount taken,
or can treat him as a trustee of the stock for its use, and enforce
the trust for its benefit by compelling a transfer or sale of the
stock for its account, and if the bank has not claimed the stock, it
cannot be held liable for the president's deceit, in the sale of such
stock.

Action brought to recover damages sustained by plaintiff
in the purchase of certain shares of stock, induced by cer-
tain false and fraudulent representations as to the financial
condition of the defendant made by its president on its
behalf.

Appeal from an order of the general term of the superior
court of Buffalo, granting a new trial to plaintiff, reversing
an order of the special term of the same court, and also re-
versing a judgment in favor of the defendant.

*Green, McMillan & Gluck,* for respondent.

*James F. Gluck*, of counsel.

*John G. Milburn* and *Ansley Wilcox*, for appellant.

EARL, J.—The complaint alleges the incorporation of the defendant bank, and that R. Porter Lee was duly elected president thereof on the 10th day of January, 1882; that on or about the twenty-first day of the same January the plaintiff was solicited by the president of the bank to purchase some of the stock of the bank, and that, as an inducement thereto, the bank, through its president, stated to the plaintiff that it was in a solvent and flourishing condition; that its bad and doubtful debts did not amount in all to the sum of $50,000 and that if it should then be wound up, the stockholders would receive a premium of at least sixty dollars on every one hundred dollars worth of stock held by them; that such representations were false and untrue to the knowledge of the president, and the bank was at the time insolvent; that relying upon such representations, the plaintiff purchased fifty shares of the stock owned by the bank, and paid the bank therefor the sum of $8,000, and received a certificate therefor signed by the president and cashier; that by means of such purchase and the subsequent failure of the bank, the plaintiff became liable to contribute toward the payment of creditors of the bank of the sum of $5,000 under the national bank act; that by reason of such purchase and failure the plaintiff has sustained damages in the sum of $13,000; that a receiver of the bank was duly appointed on the 22d day of April, 1882, and that he has filed with such receiver proof of his claim for such damages and demanded of him payment thereof, and has also tendered the certificate of the stock to him and offered to surrender the same, and demanded the sum thereof, which was refused; and the prayer for relief is as follows : " Wherefore this plaintiff demands judgment against the defendants, declaring the purchase of said stock void and setting the same aside, and for the

payment to him out of the assets of said bank as a preferred creditor of the sum of $13,000, with interest as aforesaid from the 21st day of January, 1882, or for such other or further or different relief as to the court from all the facts shall seem adequate, equitable and just."

It is thus seen that the precise and only cause of action alleged is the damages sustained by the plaintiff in consequence of the purchase by him from the bank of certain shares of its stock belonging to it, which purchase was induced by certain false and fraudulent representations as to its financial condition made on its behalf by its president.

The answer put in issue the ownership and sale of the stock by the bank, and the alleged false representations.

The action came to trial before a judge and a jury, and the following questions were submitted to the jury:

1.   Were the representations made by Mr. Lee about the financial condition of the bank at the time of the purchase of the stock to Mr. Prosser false and untrue?

2. Did Mr. Prosser rely upon those representations in the purchase of the stock and believe them to be true?

3. Was the bank insolvent at the time these representations were made?

4. Did Mr. Prosser make the contract of purchase with Mr. Lee as the agent of the bank?

5. Did the bank own the stock?

6. Did the bank get the money?

The jury answered the first, second and third questions in the affirmative and the other questions in the negative.

Thereupon the trial judge heard further evidence, and subsequently filed his decision containing findings of fact and of law.   Among his findings of fact are the following: " The said bank did not make to said plaintiff, through its president or otherwise, the statements and representations touching the condition of said bank, or in respect to the stock thereof, which are in that behalf in said complaint set

up and alleged, or either of them ; " " that said plaintiff did not purchase of said bank fifty shares of its stock, or pay said bank therefor, but he purchased the same of R. Porter Lee and paid him therefor ; " and he found as conclusions of law that the plaintiff was not entitled to the relief demanded by him, and that the complaint should be dismissed.

Thereafter, before the entry of judgment, by the consent of the parties, an order was entered staying further proceedings that the plaintiff might prepare a case and exceptions, as recited in the order, " to the end that all questions of fact in the case, and especially the fourth, fifth and sixth findings of the jury alleged by plaintiff to be irregular and incorrect, may be fully considered by the court prior to the entry of judgment herein."

The motion for a new trial was subsequently brought on, heard and decided, and thereafter judgment was entered dismissing plaintiff's complaint. From that judgment plaintiff appealed to the general term, and there the judgment was reversed and a new trial ordered. The order of reversal does not specify that the reversal was upon questions of fact, and, therefore, its justification must be found in some error of law revealed by the record.

Several interesting questions of law are discussed with much ability and learning in the brief of the plaintiff's counsel, which we do not deem it important to determine. We will assume that if this stock belonged to the bank, and the president disposed of it to the plaintiff, making the rep-. resentations alleged in the complaint, this action could be maintained ; and we will further assume that if the president represented to the plaintiff that the stock belonged to the bank, and sold it to him assuming to act for and to represent the bank, the action could be maintained, although the bank did not own the stock.

But the fundamental difficulty with the plaintiff's case is, that the bank did not own the stock, and that the president

did not represent that it owned the stock, nor assume to act for it, or on its behalf, in making the sale thereof to the plaintiff.

The finding of the trial court to this effect, sustained by sufficient evidence, and not reversed at the general term, concludes us.

As to the ownership of the stock, there is no real dispute upon the evidence. The United States Bank act (U. S. R. S., § 5201), prohibits a national bank from making any loan or discount on the security of the shares of its own capital stock, and from purchasing or holding any of such shares, unless it becomes necessary to prevent loss upon a debt previously contracted in good faith. The capital of the bank was $100,000, divided into one thousand shares of $100 each. Lee entered the bank in the spring of 1862 as messenger boy, and remained in that position for about three months, when he was made a bookkeeper. Then he became successively teller, assistant cashier, cashier, vice-president, and finally, on the 10th day of January, 1888, about three months before the failure of the bank, president. On the same 10th day of January, one McKnight was chosen cashier of the bank. At that time Lee owned more than one-half of the capital stock of the bank, and the directors allowed him substantially to control and direct the financial affairs and business transactions of the bank. On the 11th day of January he entered into contract with Mrs. Stagg for the purchase from her of fifty shares of the capital stock of the bank, for the price of $6,500, and to obtain the money to pay for such stock McKnight at his request made a note for $6,500, which he indorsed and placed in the bank as discount paper. He then drew from the bank $6,500, and paid Mrs. Stagg for the stock, and took a transfer thereof. On the 18th day of January, he bought of one Vought 148 shares of the bank at $160 per share, and to pay for the same he made a call loan from the bank of $23,600, and then obtained a New York draft from the bank, which he delivered

to Vought in payment of the stock. The call loan was made to him in the same way that call loans were made to other customers of the bank, but without any security. In purchasing these two parcels of stock he did not assume to act for the bank, but he negotiated for and purchased them in his own name ; they were transferred to him individually, and all this stock stood in his name on the books of the bank on the 21st day of January, when he made the sale to the plaintiff. The money received by Lee upon the sale to the plaintiff was used by him to pay the note held by the bank for $6,500, and to apply in reduction of the call loan.

Lee had no actual authority to buy this stock for the bank, and he could have no implied authority to buy it and thus violate the law, and he did not, in fact, buy it for the bank. The evidence tends to show that he purchased this stock for the purpose of getting it out of the hands of persons who were not useful to the bank, and selling it to persons who would be useful, and in this way he expected and intended to benefit the bank and its stockholders. But this did not make the bank owner of the stock or the purchase thereof a bank transaction.

In taking the funds of the bank to make the purchases, Lee committed a breach of trust, and upon familiar principles of law the bank could have followed its funds into the stock before a sale thereof and claimed the same. But it was optional with it whether it would do this or not. It could have relied for indemnity entirely upon Lee and held him as its debtor for the sums taken, refusing to take and allowing him to retain the stock; or it could have treated him as a trustee of the stock for it, and enforced the trust for its benefit by compelling a transfer or sale of the stock for its account. But the bank never claimed the stock; some of it was sold and the proceeds applied in repayment of the sum unlawfully taken from the bank, and thus there is no reason, whatever, for saying that the bank in any

way became the owner of the stock. Suppose, instead of buying stock, Lee had brought for himself a steamboat with the funds taken from the bank. It could have followed its funds into the steamboat and claimed the same. But it would not have been obliged to do so, and its option to do so would certainly have been lost when the boat had been sold and the proceeds of the sale used to replace the funds unlawfully taken.

We, therefore, conclude that the bank did not own this stock and had no stock to sell.

There was some evidence that Lee represented that the stock belonged to the bank and that he assumed to sell it for the bank. But such evidence was not conclusive. The trial court found the fact to be otherwise, and its finding does not present an error of law unless it was unsupported by any evidence, or was against the evidence. The finding not disturbed by the general term concludes us if there was any evidence upon which it could properly be based, and that there was such evidence seems to us reasonably clear.

As we have already shown, the stock did not belong to the bank, stood on the books of the bank in Lee's name and was by him transferred to the plaintiff. On the face of all the papers it was the individual transaction of Lee with the plaintiff. Independently of the evidence to which we will now call attention, it is highly improbable that Lee would sell his own stock as the stock of the bank. There was no reason for his doing so. The plaintiff wanted to buy the stock and it must have been a matter of utter indifference to him who owned it. All he wanted when he purchased was a good title, and that he could get as well from Lee as owner as from the bank. He had confidence in Lee as he was willing to buy knowing that he had substantial control and management of the bank. There was no motive, therefore, for selling the stock as belonging to the bank, or for making the false representations that the bank had bought the stock and then owned it, and the pre-

sumption is very strong that the transaction was what upon the face of the papers it appears to have been.   The weight to be given to these facts, inferences and presumptions was for the trial court, and it was to determine whether it was covercome by the other evidence.   All the other evidence came from the plaintiff and Lee, who was produced as a witness by him.   The plaintiff was an interested witness, and Lee, who had committed a breach of trust, and a crime in unlawfully taking the funds of the bank, and who had by false representations committed a gross fraud upon the plaintiff, was a discredited witness ; and it was for the trial court to determine how much credit should be given to the evidence of these witnesses and how much it should weigh against the facts, inferences and presumptions referred to ; and it would not have been error of law if it had wholly discredited it as it was quite improbable, so far as it tended to show that Lee did the absurd and useless thing of selling his own stock as the stock of the bank.   The whole of the plaintiff's evidence touching the ownership of the stock and the representations of Lee in reference thereto, is as follows :

"On the 21st of January, 1882, having previously left my bank book at the bank to have some interest credited to me, I called for the book.   Mr. Lee apologizingly said that he had instructed the bookkeeper to allow me interest, which the bookkeeper had before stated to me that he was not authorized to do.   The bookkeeper brought me my book, with some interest credited to me.   I had quite a balance there for me, and, noticing the amount of interest, I thought it small; the rate was four per cent.   I had a balance there and I desired to put it into something, and asked Mr. Lee if he knew of anything good to buy.   In response to that question he said :   "We can sell you some of our stock, if you would like."   I inquired how much he had for sale.   He replied: "Any portion of fifty shares."   I inquired the price.   He said 160 ; that he had sold a few

small lots at that.   I asked Mr. Lee if that was not rather steep, a large price.   In response to that he said:   " We think not.   It is precisely the price that the bank took it in at a few days ago, and which such men as S. O. Barnum and Charles D. Marshall have paid for small lots."

The plaintiff made no inquiry as to the ownership of the stock, and there was no distinct allegation as to it by Lee; and there was nothing in the conversation or negotiation between them which made the matter of ownership of any importance.   The only item of this evidence which really supports the theory of the plaintiff is the alleged represen-tation by Lee that the bank " took it in " a few days before at the same price for which he offered to sell it.   Whether that representation was made, whether what Lee said was misunderstood, misapprehended or incorrectly remembered were matters for the determination of the trial court.   In that portion of his evidence the plaintiff was not corrobo-rated by Lee.   He testified substantially as follows :

" He came in again a day or two after that and asked me if there was any stock of the First National Bank of Buffalo for sale.   I told him there was a little in the market, and he wanted to know how much it was worth.   I told him I had sold some for 160.   He wanted to know if that was not pretty steep.   I told him we thought it was worth that.   He said he had bought a little of the Manufacturers and Traders' Bank stock and had left an order for more, but he thought he would like to get some of ours.   He asked me how the bank was fixed, and I took him into the back room and I think I drew him off an abstract of the statement of the books, and he took it away with him and looked at it over night.   He came in the next day and asked if the loans were all good.   I told him, ' You know every bank has some loans that are not good.'   He asked me how much we had that was not good, and I told him if everything came out all right, as I expected, it would be pretty much all good.   I think, after hearing his testimony to-day, that he did men-

tion $50,000, and I think that I did tell him if everything did turn out as I expected it would, there would not be more than that amount of bad loans.   He handed me a check for $8,000 and told me to make out a certificate for fifty shares."

Q. What was said by him to you in relation to the ownership of the stock by the bank at that time?

A. I think I told him " we have the stock."

" I find upon the transfer book of the bank a transfer of this stock to Mr. Prosser,   The written part of the certificate is in my handwriting, and it is as follows: 'First National Bank.   For value received I hereby sell, transfer and assign to E. S. Prosser fifty shares of the capital stock of the First National Bank, subject to all the conditions and liabilities of the articles of the association and by-laws. Witness my hand in Buffalo this 21st day of January, in the year 1882.   R. P. Lee.'   It is not signed as president."

The plaintiff called Lee for further examination before the court after the jury had made their findings and had been discharged, and the following questions were put to him and answers given:   " Q. Now, Mr. Lee, in the conversation that took place between yourself and Mr. Prosser in the bank, you may state whether or not you did not use words to this effect: " We have some stock for sale."   In the course of that conversation, were these words used in respect to the question of how much it cost, Mr. Prosser having said, " Don't you think that is pretty high? "   And did you not say,   " That is the same price the bank took it in at a few days ago? "

A. I don't remember using the expression, " took it in at a few days ago," but I could not swear I did not use it.

Q. Did a conversation of that purport take place?

A. Yes sir, of that general purport; these two last points you have spoken of.

By the court—Mr. Lee, you have said, in a general way, that you have made some statement that was in substance

to the effect of what the counsel stated.   Did you state, and if you did, tell in what manner you stated to Prosser that this stock belonged to the bank ?

A. My best recollection is that I did not use the expression "of the bank ; " but, my impression is, I used the expression, " we have some stock."   I do not think Mr. Prosser inquired particularly as to who the owner of the stock was.

Q. You do not desire to be understood as swearing that the expression was not used?

A. No, sir; that is my best recollection of it.

It will thus be seen that Lee testifying to the same transaction covered by the plaintiff's evidence fails materially to confirm him.   Taking the evidence of these two witnesses, as they gave it, it is by no means clear that there was any dealing as to any stock of the bank, any representations that the bank owned the stock, or any assumption to sell it on behalf of the bank.   But when all the circumstances, with the inferences, probabilities and presumptions are weighed and considered, we think there was enough to authorize a finding that the stock was not sold as the stock of the bank, and that the dealing of the plaintiff in reference thereto was really as it was actually upon the papers with Lee as owner.

This conclusion upon the facts, leaves the plaintiff without the cause of action alleged in his complaint, and it is not important to inquire whether he had any other cause of action against the bank growing out of his purchase of the stock from Lee and the representations made by Lee.

We have carefully examined and considered other exceptions to which our attention has been called, and we do not think any of them point out any error, and they are not of sufficient importance to require any attention here.

The order of the general term should be reversed and the judgment of the trial term affirmed, with costs.

All concur except RUGER, Ch. J., not voting.

POINT ON REVIEW IN COURT OF APPEALS UPON REVERSAL ON QUESTIONS OF FACT.

The jurisdiction of the court of appeals to review questions of fact is mainly defined by sections 1337 and 1338 of the Code of Civil Procedure, which read as follows:

§ 1337. An appeal to the court of appeals from a final judgment, or from an order, granting or refusing a new trial in an action, or from a final order affecting a substantial right, made, either in a special proceeding, or upon a summary application after judgment in an action, brings up for review, in that court, every question, affecting a substantial right, and not resting in discretion, which was determined by the general term of the court below, in rendering the judgment or making the order, from which the appeal is taken; except that a question of fact, arising upon conflicting evidence, cannot be determined upon such an appeal, unless where special provision for the determination thereof is made by law.

§ 1338. Upon an appeal to the court of appeals, from a judgment, reversing a judgment entered upon a referee's report, or a decision of the court, upon a trial without a jury; or from an order granting a new trial, upon such a reversal; it must be presumed, that the judgment was not reversed, or the new trial granted, upon a question of fact, unless the contrary clearly appears, in the body of the judgment or order appealed from. In that case, the court of appeals must review the determination of the general term of the court below, upon the questions of fact, as well as the questions of law.

*In trials by court.*—In Bunten *v.* The Orient Mut. Ins. Co., 2 Keyes, 667, the defendant's argument, on appeal to the court of appeals, was chiefly made upon the proper conclusions of fact to be drawn from the testimony, and the court held that it was not at liberty to consider that subject; that the argument of fact is to be made to the court trying the cause, and to the general term, if an appeal is taken. But it goes no further, except in the single case where the general term reverses the judgment below, and certifies that the reversal was made upon questions of fact. Where that circumstance does not exist, this court can only consider such questions of law as may be presented, assuming the facts to be in all respects as certified by the court below.

In Shaw *v.* The N. Y., L. E. & W. R. R. Co., 20 W. Dig. 136, a judgment was rendered for defendant which was reversed by the general term, on the ground that upon the evidence one of two conclusions was irresistible, either of which involved a question of fact. The order of reversal did not state that it was made upon questions of fact. And it was held that, under § 1338 of the Code Civ. Pro., the reversal must be deemed to have been made, not upon any question of fact, but upon questions of law only, and that the respondent is not in a position to avail himself of the construction placed upon the facts by the general term, or to review the facts for the purpose of sustaining the conclusion arrived at by it upon the same. The

opinion of the court cannot be cited to sustain the reversal, and it can only be justified by some error of law.   Van Tassel *v.* Wood, 76 N. Y. 614; Weyer *v.* Beach, 79 Id. 409; Ward *v.* Craig, 87 Id. 550.   It was the respondent's duty to see that the order showed that the judgment was reversed upon the facts.

In Beebe *v.* Mead, 33 N. Y. 587, it was held that, where the record shows that the general term ordered a new trial both on the law and the facts of the case, the question whether the general term was right in holding that the court at circuit erred on questions of fact, is open, on appeal, to the consideration of the court of appeals.

In Van Tassel *v.* Wood, *ante*, it was held that, where in an order of general term, reversing a judgment entered upon a decision of the court on trial without a jury, it is not stated that the reversal was upon questions of fact, the reversal in order to be sustained in the court of appeals, must be justified by some error of law, and the opinion cannot be looked to in order to ascertain the ground of the reversal; if upon the facts, it must appear in the body of the order.

It was held, in Guernsey *v.* Miller, 80 N. Y. 181, that, though an appeal from the judgment of the general term is first perfected to the court of appeals, the supreme court has power to amend its record by conforming the order to the fact, and therein stating that its decision was made upon questions of fact, and its determination in that respect is not the subject of review.   See Buckingham *v.* Dickinson, 54 N. Y. 682.

In Clarke *v.* Lourie, 82 N. Y. 580, it was held that where the order appealed from states no ground for the decision, the opinion of the court cannot be resorted to for the purpose of determining the reasons upon which it is based; and that, unless the contrary appears, it must necessarily be assumed that the order was made in the exercise of the discretion of the court which granted it.

In Shultz *v.* Hoagland, 85 N. Y. 464, the validity of a general assignment made for the benefit of creditors, was assailed upon the ground of fraud. The special term upheld it, as honest and fair, because not satisfied from the evidence that it was executed with an intent to hinder, delay or defraud the creditors of the assignor; but upon appeal, the general term reversed this decision, having reached an opposite conclusion upon the question of fraudulent intent.   The reversal by the latter court was certified to have been upon questions of fact, as well as upon questions of law, and it was held, on appeal to the court of appeals, that the inquiry, whether this assignment was proved to have been made with an actual fraudulent intent, is open to review in the latter court, unrestrained even by the findings of the trial judge.   See also Godfrey *v.* Moser, 66 N. Y. 250.

In The Rider Life Raft Co. *v.* Roach, 97 N. Y. 378, it was stated that the rule undoubtedly is that, unless otherwise appearing, the court of appeals will assume the order to have been granted upon questions of law, and these only can be considered on appeal.   If the court below was influ-

enced in its determination by questions of fact, and it was material to the defendant to make this apparent, he should have seen to it, that the order showed that the reversal was upon the facts. In case he fails to do this, he is not in a position to claim that a new trial should be denied upon grounds remote from the merits of the controversy which he is prevented from urging by reason of the silence of the order.

In Nicholls *v.* Wentworth, 100 N. Y. 455, the general term reversed a judgment awarding a perpetual injunction against the defendant from obstructing a certain alley, upon the ground that the evidence did not authorize the finding made by the prior court, that the use of the alley by the plaintiff and her grantors had for a period of more than twenty years been open, notorious and well known, under a claim of right, and adverse to the exclusive ownership of any part thereof by the defendant. And it was held that the order of reversal, as it does not specify that it was made upon questions of fact, must be deemed to have been made upon questions of law. Section 1338, Code Civ. Pro.; Davis *v.* Leopold, 87 N. Y. 620; Rider L. R. Co. *v.* Roach, *ante.* The only question, in such case for the consideration of the court of appeals is, whether there was sufficient evidence to support the finding of the trial court, and the legal conclusions predicated thereon, that such a user will establish a right in one party, to an easement in the land of another, if continued for a sufficient length of time.

Where the reversal of a judgment in favor of plaintiff, entered upon trial by the court without a jury, is upon the law only, the court of appeals does not have to deal with the weight of the evidence, but simply to determine whether there is any evidence which authorized the findings of the essential facts. N. Y. etc., Ferry Co. *v.* Moore, 102 N. Y. 667.

In Lewis *v.* Barton, 106 N. Y. 70, it was held that, though it appears by the opinion of the general term that a judgment in an action tried by the court was reversed upon the facts, yet, if this does not appear in the order of reversal, the court of appeals is bound to presume that the reversal was upon questions of law only.

The action in Prosser *v.* The First Nat. Bank of Buffalo, reported above, came to trial before a judge and jury, and questions of fact were submitted to the jury. The trial judge subsequently heard further evidence, and filed his decision containing findings of fact and of law. A motion for a new trial was afterwards brought on, heard and decided, and thereafter judgment was entered, dismissing plaintiff's complaint. From this judgment, plaintiff appealed to the general term, and there the judgment was reversed and a new trial ordered. The order of reversal does not specify that the reversal was upon questions of fact, and upon an appeal to the court of appeals, it was held that the justification of the reversal must be found in some error of law revealed by the record.

In Lowery *v.* Erskine, 113 N. Y. 52, the trial court, after a hearing, rendered judgment for the plaintiffs for a part of the property specified in the complaint, and for the defendant upon the remaining portion. The

defendant appealed to the general term upon exceptions to the findings, from the whole and every part of such judgment, and the plaintiffs, from that part which favored the defendant. The general term, upon questions both of law and fact, reversed so much of the judgment as was in favor of the plaintiff's, ordered a new trial thereof and affirmed so much as favored the defendant. From this judgment, the plaintiffs appealed to the court of appeals upon a stipulation for judgment absolute in case of affirmance. And it was held that the general term, having authority to hear appeals, both upon the law and the facts, must be deemed to have determined upon errors of fact, if that is necessary to sustain its judgment. See § 1338, and subd. 1, § 1347, Code, Civ. Pro.; Verplanck *v.* Member, 74 N. Y. 620.

The rule governing appellant tribunals in reviewing questions of fact, is stated in Baird *v.* The Mayor, etc., 96 N. Y. 577, to be : To justify a reversal, it must appear that such findings were against the weight of evidence, or that the proof so clearly preponderated in favor of a contrary result, that it can be said, with a reasonable degree of certainty that the trial court erred in its conclusions. See also Lowery *v.* Erskine, *ante;* Crane *v.* Baudouine, 56 N. Y. 256; Westerlo *v.* DeWitt, 36 Id. 344.

In Roberts *v.* Tobias, 120 N. Y. 1, an action was brought to set aside an assignment for the benefit of creditors upon the ground that it was fraudulent and void. The trial court found in favor of the plaintiffs, and, on appeal to the general term, judgment was reversed. And it was held that, if the general term had intended to place its reversal on the finding of the trial court that the assignment in question was intended to hinder, delay and defraud creditors, etc., which was not supported by the appeal book, there should have been inserted in the order a statement to the effect that the reversal was made upon questions of fact as well as law, and in the absence of such a statement, the court of appeals is required to presume that the reversal was upon questions of law only.

After the decision of the court of appeals was announced, the general term made an order amending its order reversing the judgment, so as to state that it was reversed upon questions of fact, as provided by § 1338, Code Civ. Pro., after which an application was made to the court of appeals for a reargument, which was granted. See 120 N. Y. 665. And it was held that, as it now appears that the reversal of the general term was made upon the question of fact, the order should be affirmed, and judgment absolute ordered for the respondents upon the stipulation.

*In trials by referee.*—In Thompson *v.* Menck, 2 Keyes, 82, it was not stated in the judgment or order of reversal of the general term, that the judgment on the report of the referee was reversed on the questions of fact. This case was decided under the former Code, and § 268 of that Code declared that it shall not be deemed to have been reversed on questions of fact, unless so stated in the judgment of reversal. And it was held that

the court of appeals could not avoid this statute, how much soever it might be impressed with the injustice of the finding of the facts below. This court has held so distinctly in a number of cases, and have denied motions for leave to send the case back that the court below might amend its judgment or order, by reversing the findings of fact. Such motions were made upon the ground that, from the opinion of the general term, it was clear that the court intended to reverse the facts, but that the order of reversal failed to express that intent. Though, in looking at the evidence, the court of appeals might wish that the referee had found some of the facts otherwise than he did, and though the general term, by an exercise of its power, might have reversed these findings of fact if contrary to its judgment, the court of appeals cannot do so; it cannot repeal the statute in order to work out justice in that way.

In Petersen *v.* Rawson, 34 N. Y. 370, the case was referred and judgment entered upon the referee's report in favor of plaintiff. On an appeal to the general term, it is recited in the order of reversal, that this judgment, was reversed upon questions of fact. The plaintiff appeals to the court of appeals from this judgment of the general term. And it was *held* that, if the judgment is reversed at the general term, and a new trial ordered, it shall not be deemed to have been reversed upon questions of fact, unless. so stated in the judgment of reversal; and, in that case, the question whether the judgment should have been reversed, either upon questions of fact or of law, shall be open to review in the court of appeals. The whole case upon the facts is presented to this court for review, and it is to determine whether the judgment should have been reversed upon the questions of fact.

In Westerlo *v.* De Witt, *ante,* a majority of the judges of the general term, in examining the evidence, took a different view of the facts and of the law from that taken by the referee, while a minority concurred with him in both respects. And it was *held,* on appeal to the court of appeals, that the question was before this court, as an original question, and in the same manner that it was before the general term. This is not precisely the same question as though the appellate court was inquired of whether it should have found the same facts and have determined the law in the same manner. But it is, rather, is it so certain that the referee was in error upon the facts, that it will assume to reverse his judgment? If the case is doubtful, his conclusions should not be reversed. If this court, upon reading the evidence, should be of the opinion that the conclusion might well have been either way, then the fact that the referee saw the witnesses, heard them testify, and had the nameless opportunities of judging of their character that personal acquaintance alone can give, should induce the appellate court to defer to his judgment. But if, upon the other hand, the court is clearly of the opinion that the referee erred in deciding the facts, it is bound to reverse his judgment. See also Ball *v.* Loomis, 29 N. Y. 412; Petersen *v.* Rawson, *ante.*

Point on Review upon Reversal on Questions of Fact.

In Baldwin *v.* Van Deusen, 37 N. Y. 487, the case came before the court of appeals upon an appeal by the plaintiff from an order of the general term reversing a judgment in his favor, entered upon the report of the referee and ordering a new trial. The order of the general term failed to show that it was based upon questions of fact. And it was held that it must, therefore, be assumed in the court of appeals to have been made upon questions of law arising upon exceptions taken by the respondent upon trial, or to the report of the referee as made.

Where the judgment of reversal does not state that the reversal was made upon questions of fact, it must not be deemed to have been reversed on questions of fact, but the court of appeals must consider the decision of the general term, reversing the judgment of the referee, as involving a question of law alone. Van Blarcom *v.* The Broadway Bank, 37 N. Y. 540.

In Colwell *v.* Lawrence, 38 N. Y. 71 , it was *held* that questions of fact, on affirmance below, are not properly before the court of appeals, and the appellants cannot urge that the report of the referee was erroneous as to the facts. See also Metcalf *v.* Mattison, 32 N. Y. 464; Loty *v.* Carolus, 31 Id. 547; Wilcox *v.* Hawley, Id. 648; Petersen *v.* Rawson, *ante.* The . findings of fact by a referee are not the subject of review in the court of appeals, except where the supreme court has reversed a judgment upon questions of fact, and so stated in its order; it is, in such case, upon appeal, brought within the jurisdiction of the former court.

In Smith *v.* Ætna Life Ins. Co. 49 N. Y. 211, it was *held* to be the duty of the general term of the supreme court to set aside a referee's report which is against the clear weight of evidence; and that, where a judgment has been reversed, and a new trial granted by that court upon the facts, the court of appeals occupies the same position, and the facts are open for review.

In Kirkland *v.* Leary, 50 N. Y. 678, it was *held* that resort cannot be had to the opinion of the general term to determine whether a new trial was granted upon questions of law or fact.

In Sheldon *v.* Sheldon, 51 N. Y. 354, the order of the general term did not state that the reversal was on questions of fact, and it was *held* that the reversal must be deemed to have been on questions of law. It does not matter that the opinion given at general term shows that the reversal was on questions of fact, so long as it does not appear in the order of judgment of said court. In such case the court of appeals, on the appeal, can review only questions of law, and can look into the case only for the purpose of seeing whether any error of law was committed. But if the referee has found any material fact wholly without evidence, or against the undisputed evidence, then he has committed an error of law which is reviewable in the court of appeals. See also Draper *v.* Stouvenal, 38 N. Y. 219; Fellows *v.* Northrup, 39 Id. 117; Mason *v.* Lord, 40 Id. 476.

In Crane *v.* Baudouine, *ante,* an appeal to the court of appeals was taken.

from an order of the general term, reversing the judgment of the referee and ordering a new trial. The order of the general term stated that the judgment of the referee was reversed upon questions of fact, and it is apparent from the case, that it was reversed upon questions of fact alone. In such case, the question is open for review in the court of appeals. It is not the same question as though the latter court should inquire whether it would have found the same facts in the same way as did the referee. It is, rather, is the court so certain that the referee was in error, upon the facts, as that it will assume to reverse his judgment? If it appears that his conclusion is not against the weight of evidence, that it might have been either way, or that the testimony is slight on which to found a conclusion contrary to his, then the consideration that he saw the witnesses, and had the assistance of their presence before him, uttering orally to him their testimony, should lead to a deference to his judgment. See Westerlo *v.* De Witt, *ante.*

In Johnson *v.* Youngs, 65 N. Y. 599, the referee made a report finding the existence of the partnership substantially as alleged in the complaint and directing an accounting. Defendant moved on a case to set aside the report and for a new trial. The motion was granted. The order of the general term stated that the facts proved were insufficient to establish the partnership, and that the exceptions to the findings of fact on the ground that the same were unsupported by the evidence, were well taken, and it was *held* that the motion was properly made under § 268 of the former code, as amended in 1867; and that an appeal from the order of the general term was properly taken under said section, and that under the order every question of fact and law was open for the consideration of the court of appeals.

In Godfrey *v.* Moser, 66 N. Y. 250, it was held that, in reviewing a decision of the general term reversing a judgment entered upon the report of a referee, where it is certified that the order of reversal was made upon questions of fact as well as law, the court of appeals occupies the position of the general term as to the facts as well as the law. When such review is proper, it is the duty of the appellate court to pass upon the facts from the evidence, and, in this respect, the duty is different from what it is in reviewing a judgment entered upon the verdict of a jury. In the latter case, the right of reviewing the facts is not conferred, and to reverse upon the facts, there must be an absence of any evidence to sustain the verdict; so in the court of appeals, in reviewing a judgment entered upon the report of a referee, in the absence of such certificate, the finding of facts is conclusive, if sustained by any verson of the evidence which the referee was authorized to give it. In reviewing the facts, proper deference should be awarded to the judgment of the referee in cases of serious doubt, upon conflicting evidence, especially when it is probable that the appearance of the witnesses, or their manner of testifying, was, or might have been, controlling in determining the questions; but these cases are rare, and, in general,

it is the duty of the appellate court to take the responsibility of examining the evidence and determining the facts for itself.

Upon a subsequent motion for a reargument of this case in the court of appeals, it was held by that court that there has never been any doubt that the general term has a right, and that it is its duty, to consider the facts in such a case, and pass upon them; and, when the general term certifies that the reversal is upon questions of fact, such questions are open to review in the court of appeals.

In Verplanck *v.* Member, 74 N. Y. 620, it was held that the legal assumption is that the general term, on appeal from a judgment entered upon the report of a referee, considers and reviews the facts; and to rebut this presumption, so as to present the point on appeal to the court of appeals that the general term refused so to do, the refusal must clearly appear by the record, and the opinion of the general term is not conclusive on this subject.

In Weyer *v.* Beach, *ante,* in the opinion at general term, the reversal of the judgment was placed upon two grounds, one of which was that it disagreed with the referee as to the facts, and was of opinion that the evidence established an agreement by the respondent to become surety for the contractors for such sums as they might owe the claimants for brick furnished. and that his undertaking, not being in writing, was void by the statute of frauds.  The order of reversal, however, did not state that it was made on questions of fact, and it must, therefore, pursuant to § 1338 of the Code, be deemed to have been made, not on any question of fact, but on questions of law only.   And it was held that the respondent could not, consequently, avail himself of the view of the facts taken by the court at general term, but must abide by the findings of the referee, in case they have some evidence to support them.

In Davis *v.* Leopold, *ante,* it was held that, where the facts found by the referee justified the relief sought, and it does not appear that the judgment entered by his direction was reversed by the general term upon questions of fact, the court of appeals has only to inquire whether it rests upon any error in law.

In Sherwood *v.* Hauser, 94 N. Y. 626, the general term reversed the decision of a referee upon questions of fact, and an appeal was taken to the court of appeals to review the determination of the former court.   And it was held that it was the duty of the court of appeals to examine the whole evidence, and judge for itself whether the evidence has sufficient force to uphold the appellan't allegations; and if it has, or if the evidence, as it appears upon the record, is balanced, and the court can see that inferences drawn from the appearance of the witnesses and their manner of testifying, might turn the scale toward the fact testified to, it may assume that there were circumstances of that kind proper for the consideration of the referee, and that they affected his determination as to the degree of credit which should be given to them.   In either case, his conclusion should

stand; for, in neither event, could it be said to be manifestly against or contrary to evidence. See also Godfrey *v.* Moser, *ante;* Westerlo *v.* De Witt, *ante;* Crane *v.* Baudouine, *ante.*

Where the order of the general term states that the judgment entered upon the report of the referee was reversed, both upon the law and the facts, the case is free from doubt upon the appeal; but where the reversal is for error of law only, the evidence must be carefully scrutinized to see if there was any which in law was sufficient to sustain the judgment. Kane *v.* Cortesy, 100 N. Y. 132.

In Holcombe *v.* Munson, 103 N. Y. 682, the referee found upon each of the questions mainly litigated in favor of the plaintiff, and, from the judgment entered upon his report, the defendants appealed to the general term. This court, after an examination of the evidence in the case, came to the conclusion, that the referee erred upon the facts in ordering judgment for the plaintiff. Instead, however, of determining the case upon this ground, its decision was placed, as shown in the order of reversal, upon questions of law alone; and it reversed the judgment and directed a new trial. The plaintiff appealed to the court of appeals, giving the usual stipulation for judgment absolute. And it was held that the decision of the general term precluded the court of appeals from reviewing the case upon the facts and confined it to the examination and decision of the questions of law presented by the record. The court said that, in view of the repeated warnings given by it of the hazard incurred by a party in taking such course, of encountering some objections and exceptions taken on the trial, but not considered by the general term, which might prove to have been well taken, and especially in a case that bristles with exceptions, it was, to say the least, quite dangerous to risk the chances of an affirmance by the court for such errors. See also Cobb *v.* Hatfield, 46 N. Y. 533; People *v.* Super. of Essex Co., 70 Id. 228; Mackey *v.* Lewis, 73 Id. 382.

Upon such an appeal, it is the duty of the court of appeals to examine the whole record, for the purpose of discovering whether there were any errors committed by the trial court, which would have authorized an order of reversal by the general term; and, if such are found, it is the imperative duty of this court to affirm the order appealed from and order judgment absolute for the respondent. Id.

In Inglehart *v.* Thousand Island Hotel Co., 109 N. Y. 454, the general term reversed the judgment, but did not declare in its order that the reversal was upon the facts; and it was held that the court of appeals must assume that the reversal was for error in law; §§ 1337, 1338, Code Civ. Pro.; Kane *v.* Cortesy *ante*, and cannot go to the opinion to ascertain Van Tassel *v.* Wood, *ante.*

*In jury trials.*—In East River Bank *v.* Kennedy, 4 Keyes, 279, it was held that, if a judgment rendered on the trial of an action by the court without a jury, or by a referee, is reversed in general term, such reversal is to be deemed made upon questions of law, unless it appears in the order of

reversal that it was made on questions of fact; and that, when it does not so appear, the review in the court of appeals is confined to questions of law raised on the trial and made the subject of exception. This case was decided under the former Code; and §§ 268, 272, of that Code were held to have no application to an order reversing an order of the special term, setting aside a verdict, and ordering a new trial after a trial by jury.

Prior to 1851, the decisions were uniform, not only that an order granting a new trial was not final and, therefore, not appealable to the court of appeals, but also that the court of appeals, in cases of appeals from judgments on reports of referees, had no jurisdiction to review questions of fact upon a case, though sought by appeal from the judgment.

In 1851, the former Code was so amended as to allow an appeal to the court of appeals from an order granting a new trial; and this court held, in Moore *v.* Westervelt, 1 Code R. N. S. 415, that this amendment did not include new trials upon a case involving questions of fact, but only where questions of law are involved in such order.

In 1852, this amendment, in the particular mentioned, was repealed. But in 1857, this section was again amended so as to give an appeal from an order granting a new trial; and in 1862, it was extended so as to embrace an order refusing a new trial. But, according to the decision in Moore *v.* Westervelt, *ante*, this did not bring under review questions of fact, as upon a case, such as that the verdict is against the weight of the evidence, or where the motion is founded upon alleged surprise or newly discovered evidence, but on questions of law only.

The general policy of the legislature, in leaving questions of fact to be settled by the courts of original jurisdiction, and giving an appeal to the court of appeals where the rules of law are claimed to have been erroneously determined, is departed from in two instances only, viz., where a cause is tried by the court or by a referee, and a reversal is ordered upon questions of fact; but in these cases the review of the facts do not extend to cases tried by a jury.

The court practice, under the former Code, may be stated thus: When the court below sets aside a verdict and grants a new trial, on the ground that the verdict is against evidence or is unsatisfactory, or on the grounds of surprise or of newly discovered evidence, or for other reasons resting in the facts only, or in the discretion of the court to grant a new trial, the order is not reviewable in the court of appeals in any form, and should state that it is granted upon questions of fact, or, in some form it should so appear clearly by the record. Where the verdict is set aside and a new trial is ordered for errors in law, the court of appeals has jurisdiction to review the order, upon the appellant's giving the proper stipulation and consenting to final judgment in case the order is affirmed. Where the record does not, in some form, show that the order for a new trial was based upon questions of fact, it must be assumed, in the court of appeals, that the order was granted for errors in law committed at the trial, and if

the court finds no such errors, the order must be reversed. Where the appeal is from an order refusing a new trial, questions of law only can arise on the hearing of the appeal.

In the cases of Hoyt *v.* Thompson's Ex'rs, 19 N. Y. 208, and Miller *v.* Schuyler, 20 Id. 522, it was held that, unless the case was such as to negative any inference that the new trial was granted on questions of fact, an appeal from the order presented no question of law for adjudication by the court of appeals. But these decisions were made before the amendment of 1860, allowing a review in this court upon the facts in cases tried before the court or a referee, and are no longer applicable to that class of cases; but they are applicable to cases tried by jury, as the law in respect to them remains the same as when these decisions were rendered.

Prior to the year 1860, decisions of the general term granting or refusing new trials upon questions of fact, were not reviewable in any case in the court of appeals. But in that year a provision was inserted in § 268 of the former Code, relative only to cases tried by the court, that if the judgment is reversed at general term on questions of fact, the question whether it should have been reversed, either on questions of fact or law, should be open to review in the court of appeals. And it was also enacted in the same clause, that if the judgment is reversed at general term, it shall not be deemed to have been reversed on questions of fact, unless so stated in the judgment of reversal. Wright *v.* Hunter, 46 N. Y. 409.

The same provisions were, by § 272 of the former Code, applied to cases tried by a referee.

But there was no provision in the former Code for the review, in the court of appeals, of an order of the general term granting a new trial upon questions of fact, where the case was tried by a jury. The general provision of § 11 of that Code, authorizing appeals from orders granting new trials, was not construed as entitling the appellant to a review in the former court of the decision of the general term upon questions of fact, except in cases tried before the court of a referee. Id. Young *v.* Davis, 30 N. Y. 134.

In cases tried before the court or a referee, there was no difficulty in determining whether the new trial, granted at general term, was granted on questions of law or of fact, for §§ 260 and 272 of the former Code provided that the judgment shall not be deemed to have been reversed on questions of fact, unless so stated in the judgment of reversal.

But these sections were not applicable to cases tried by a jury, and the court of appeals was compelled to look at the return in such cases for the purpose of determining whether the judgment was, or may have been, reversed as questions of fact.

The appellant must show that the granting of a new trial was erroneous in matter of law; and if it appears by the return that exceptions were taken at the time, and that there was no substantial conflict as to the facts, or that no application for a new trial was made to the judge at circuit, or to the special term, the court of appeals is justified in assuming that the gen-

eral term passed exclusively upon questions of law, as no others had been properly before them, and will review those questions. But where the return shows that questions of fact were legitimately before the general term, and that the evidence was such that the court may have reversed the judgment on the facts, it is impossible to say, from an inspection of the record, that it committed an error of law in granting a new trial, though the court of appeals should be of opinion that none of the exceptions were well taken.

The respondent should not be deprived of the new trial he has obtained, on account of his failure to obtain an entry of the grounds of the decision in the judgment of reversal, as there is no statute requiring or authorizing such entry to be made.

Where there is a substantial conflict in the testimony, and a motion for a new trial, has been made at special term, or to the judge at circuit, and denied, and an appeal from that order taken to the general term, the question of the weight of evidence is properly before the general term; and though there are also exceptions in the case, it is impossible to determine from the record that the new trial was granted upon the exceptions alone; and the appellant, in such a case, fails to show that the general term has committed an error of law in granting the new trial. If the new trial is granted upon the evidence where the trial has been by jury, the decision of the general term is not reviewable in the court of appeals. Wright *v.* Hunter, *ante ;* Young *v.* Davis, *ante.*

In Sands *v.* Crooke, 46 N. Y. 564, a motion for a new trial upon the evidence, and upon exceptions, was made to the judge at circuit and denied, and judgment was thereupon entered upon the verdict. An appeal from that judgment, and also from the order denying a new trial, was taken to the general term, and was heard upon a case containing the evidence, as well as the exceptions taken at the trial. The general term reversed the judgment and granted a new trial. An appeal to the court of appeals from the order granting a new trial was brought upon the assumption that §§ 268 and 272 of the former Code, which provided that a judgment shall not be deemed to have been reversed on questions of fact, unless so stated in the order of reversal, applied to cases tried by jury. But it was held that these sections applied only to cases tried by the court or a referee, and that, in cases tried by a jury, where a new trial is granted at general term, the court of appeals will not entertain an appeal from the order granting a new trial, if it appears from the return that such order was, or may have been, made upon questions of fact.

In Downing *v.* Kelly, 48 N. Y. 433, it was held that, where it is shown by the order itself that the new trial was granted on questions of fact as well as of law, it is not reviewable by the court of appeals for the purpose of reversing it. Where, in a case tried before a jury, the judgment has been reversed and a new trial granted upon questions of fact, and the proceedings have been regular, and appeal will not lie to this court. The

return made to the appellate court must be examined for the purpose of determining whether the judgment was, or may have been, reversed on questions of fact. If the record shows that questions of fact were properly before the general term for decision on the appeal to it, and that the order for a new trial may, or could, have been based thereon, then the court of appeals will not review it for the purpose of reversal; or, in other words, it is necessary, to sustain the appeal to this court from such an order, for such a purpose, that it shall appear by the record to have been founded on questions of law only. This court is not limited or restricted in the review of the case, on the appeal, to the grounds or reasons assigned in the opinion of the court below for the decision made by it.

Where there is a substantial conflict in the testimony, and a motion for a new trial upon the evidence has been made at special term, or to the judge at circuit, and denied, and an appeal from that order taken to the general term, the question of the weight of evidence is properly before the general term; and though there are also exceptions in the case, it is impossible to determine from the record that the new trial was granted upon the exception alone. In such case, the appellant on an appeal to the court of appeals fails to show that the general term has committed an error of law in granting a new trial; for, if granted upon the evidence in a jury trial, its decision is not reviewable in the court of appeals.

In Harris v. Burdett, 73 N. Y. 136, the defendants moved upon the minutes for a new trial, on the ground of the insufficiency of the evidence. The motion was denied, and judgment entered on the verdict, and an appeal taken to the general term from the order denying a new trial, and also from the judgment. On these appeals, the general term reversed the judgment and ordered a new trial, and inserted in its order of reversal a statement that the reversal was on questions of law solely. The plaintiffs appealed to the court of appeals, and the defendants moved to dismiss the appeal. And it was held that an appeal to this court will not be entertained where the court below has ordered a new trial in a case tried by jury, if any material and controverted question of fact was involved, and the general term granted, or might have granted, the new trial on such question of fact.

The appealability of the order depends upon the question whether the new trial was actually granted upon questions of fact or of law, and the declaration of the court below that its decision was based upon questions of law only is not sufficient to render the case appealable. Id. The court of appeals will not regard the opinion as conclusive, inasmuch as the result may have been concurred in by some of the judges on their view of the facts, and there is no authority of law for inserting the ground of reversal in the order, as in the case of trials before the court or a referee. It is incumbent upon the appellant to show error in the decision appealed from, and an order granting a new trial is not shown to be erroneous by showing that there was no valid exception in the case, provided it was in such a condition that the general term could have reversed upon the facts.

Though the general term does actually grant the new trial on a question of law, and this can be made conclusively to appear; yet, if the case comes before the general term in such form, and the character of the evidence is such, that a new trial may have been granted on questions of fact, the order is not, and should not be appealable to the court of appeals. To hold otherwise may result in entirely depriving the party, against whom the judgment was rendered, of the review at general term upon the facts, to which the law entitles him.

In case the court of appeals should differ with the general term upon the question of law on which its order for a new trial was founded, and should reverse the order, the consequence would be an affirmance of the judgment entered on the verdict, and in that event the respondent would have a final judgment against him, without having had any review of the verdict by the general term upon the evidence, notwithstanding that the law gives him the right to such review, and he has taken all the steps required to obtain it.

By an appeal from the order denying the motion for a new trial on the minutes, the questions of fact are brought legitimately before the general term, and it must be presumed that it would have passed upon them, had it not been of opinion that the point of law required a reversal of the judgment. If the court of appeals, under such circumstances, should finally dispose of cases on appeal from orders granting new trials, a mistake by a general term, in respect to a question of law, would result in entirely depriving the party, against whom the judgment was rendered, of any review of the verdict upon the evidence. For these reasons the court of appeals has declined to entertain such appeals. Though the latter court could hear the appeal, and if it overruled the point of law upon which the new trial was granted, the case might be sent back to be reheard at general term upon the facts; yet, there is no precedent for such a practice.

Where exceptions have been taken, and a motion for a new trial has also been made upon the minutes or at special term, the unsuccessful party may waive any further review upon the facts, and appeal to the general term from the judgment; and this appeal will bring up the exceptions only. Or, where an appeal is taken from the order refusing a new trial, as well as from the judgment, the general term may reverse the judgment upon the exceptions, and at the same time affirm the order refusing a new trial upon the facts. In either of these cases, the order of the general term is appealable to the court of appeals. But in no others will such an appeal lie where the trial has been by jury, if controverted and material questions of fact are involved, and a motion for a new trial has been made on the evidence.

The inconvenience and expense of going back for a new trial, when the result may ultimately depend upon a question of law, are not nearly so great a hardship as would be inflicted by rendering a final judgment against a party, upon a verdict which may have been rendered contrary to the

weight of evidence, and which would have been set aside by the court at general term, had it not rested its order granting a new trial upon an erroneous view of the law. The purpose of the amendment of 1857 to the former Code was to obviate this inconvenience; but the right of appeal was confined to cases depending wholly upon questions of law, except where the trial was before a court or referee. The court of appeals cannot extend it to cases tried before a jury, where questions of fact, as well as law, are involved.

Where, on the trial the case is submitted to the jury, and determined on a controverted question of fact, and where, even if the general term is of opinion that the verdict on that question was against the weight of the evidence, the plaintiffs are, nevertheless, entitled to judgment upon the uncontroverted facts, unless the decision of the general term upon the question of law can be sustained, the order is appealable, for then no material question of fact is involved, and a new trial will be of no avail, as the result will depend wholly upon the question of law.

In Snebley *v.* Conner, 78 N. Y. 218, the case was submitted to the jury upon conflicting evidence and they found a verdict for the plaintiff. The defendant then made a motion for a new trial on the minutes of the judge, and the motion was denied, and a formal order to that effect was entered. Judgment was then entered upon the verdict for the plaintiff, and the defendant appealed from both the judgment and order to the general term, and it reversed both and granted a new trial. The plaintiff then appealed to the court of appeals from the order of the general term, stipulating for judgment absolute against him in case of affirmance of the order; and, upon appeal from such order, it was held that, as the practice in such cases had become thoroughly established and known, the order should be affirmed in accordance with the stipulation in the notice of appeal, instead of the appeal being dismissed; and that the opinion of the general term cannot be looked to for the reason or grounds of its decision.

In Goodwin *v.* Conklin, 85 N. Y. 21, it was held that, in cases tried by jury, there is no necessity that the order of reversal should state whether it was made on questions of law or fact. Where the facts are properly before the general term for review it has the power to reverse the judgment and order a new trial upon the evidence; and if it had made the order in this form, its decision would not have been reviewable in the court of appeals. Where the general term omits to order a new trial, its order is in substance an absolute and final reversal of the judgment.

But whether the reversal is founded upon the questions of fact or of law involved, it is a case for a new trial, and not for a final judgment, where the appellate court cannot say that, under the pleadings, it will be impossible to present evidence which will require the submission of the claim to the jury. It does not follow, however, that because the general term went too far in awarding final judgment, its order should be wholly vacated, and the original judgment restored. It would be a proper case for awarding a

new trial on the issue, and the proper course, in such a case, is to modify the order accordingly.

In Pharis v. Gere, 107 N. Y. 231, several questions of fact were litigated upon the trial and submitted to the jury, and they rendered a verdict in favor of the plaintiff. The defendant made a motion for a new trial upon the minutes of the trial judge, which was denied. Subsequently a judgment was entered upon the verdict, and then the defendant appealed from the order denying the motion for a new trial and from the judgment to the general term, where both the order and the judgment were reversed and a new trial granted. The plaintiff then appealed to the court of appeals giving the usual stipulation.

The appellant, while conceding that this court has no jurisdiction to hear the appeal, provided the general term may have granted the new trial upon a question of fact, claimed that this case was not so before the general term, that it could reverse the order and judgment upon a question of fact ; but in this the court of appeals was constrained to differ with him. It is not required that written notice of the motion for a new trial upon the judge's minutes should be given. It may be brought on immediately after the rendition of the verdict without any previous notice. But it can be based only upon one of the grounds mentioned in section 999 of the Code, and must be heard upon the minutes only. In the argument of the motion, the ground upon which it is based will necessarily be disclosed and the order entered upon the motion should, with propriety, always state the ground or grounds upon which the motion was made. If it does not, and the order is one denying a motion for a new trial, and an appeal is taken therefrom to the general term, it will usually be impossible for the appellate court to know upon what ground the motion for a new trial was based, and what questions were before the trial judge for consideration. But there is no reason why the general term may not entertain such an appeal, and, when it does, and the questions are argued and submitted to it for determination, and it reverses the order and grants a new trial, a different state of things exists. Then it will be assumed that its order was based upon some one of the grounds mentioned in § 999, and, where the case presented disputed questions of fact, it cannot be said that the reversal was not upon a question of fact. Consequently, upon an appeal from such an order to the court of appeals, as the reversal may have been upon a question of fact, there is nothing for the court to review. It is sufficient to render it impossible for said court to consider the appeal that the general term may, upon a question of fact, have reversed the order and granted a new trial.

In Pharis v. Gere, on a subsequent appeal to the court of appeals, 112 N. Y. 408, the judgment was reversed after verdict, on an appeal taken to the general term, and an order made awarding a new trial, and from that decision an appeal was taken to the court of appeals, and it was held that, while an appeal cannot be taken from the mere judgment of reversal, where

it is accompanied by an award of a new trial, there can be an appeal taken from that order, and on that appeal the judgment of reversal must be reviewed. Where, on an appeal from the order of the general term granting a new trial, the stipulation required in such case by § 191 of the Code is duly executed, the court of appeals is enabled to review the order for a new trial, and, at the same time, the judgment of reversal of which it is the necessary and logical consequence. The appeal from the order, explicitly permitted by the Code, gives jurisdiction, and the court of appeals, having obtained jurisdiction, is required to extend its review to the judgment of reversal. While the latter cannot be appealed from, it can be reviewed on the appeal from the order. The decision of the general term, under the distinction of the Code, is not a single, but a compound thing. It consists both of a judgment and an order, viz.: a judgment of reversal, and an order for a new trial. The latter may be, but the former cannot be appealed from.

Where the record to the court of appeals shows an appeal from the order, as well as from the judgment, of the trial court, and the court of appeals cannot say that the reversal might not have been made upon the facts, it will dismiss the appeal, unless the difficulty, by an amendment, is removed. If the general term makes that amendment, and changes its order so as to show a dismissal of the appeal from the order refusing a new trial, there is nothing left to the court of appeals but a reversal and order for new trial founded upon errors of law.

In Boyle *v.* N. Y. L. E. & W. R. R. Co., decided in court of appeals, June 4, 1889, 115 N. Y. 636, the plaintiff recovered a verdict at the circuit. The defendant then made a motion for a new trial upon the minutes of the trial judge, under § 999, Code Civ. Pro., on the ground that the verdict was contrary to the evidence. This motion was denied, and the judgment entered upon the verdict. The defendant then appealed to the general term, both from the judgment and the order denying the motion for a new trial, and this court reversed both the judgment and the order and granted a new trial solely, as stated in its order, upon questions of fact. The plaintiff appealed to the court of appeals, giving stipulation for judgment absolute in favor of the defendant, in case the order should be affirmed. And it was held that this appeal clearly brought nothing up for review, and the court of appeals, instead of dismissing the appeal, affirmed the order of the general term.

*In surrogate proceedings.*—In Matter of Cottrell, 95 N. Y. 329, it was held that, in reviewing questions arising on appeals from surrogates' courts in cases commenced therein previous to September 1, 1880, when the last seven chapters of the Code of Civil Procedure went into effect, the court of appeals is precluded, by § 1337 of that Code, from re-examining the conclusions of fact reached by the court below, except in cases where the supreme court has reversed their judgments upon such questions, and so certified in their order of reversal. See § 1338.

Previous to the adoption of that section, appeals from the decrees of surrogates brought up for review, by the appellate tribunals, all of the questions, whether of fact or law, which were determined in the court of original jurisdiction.

Such appeals are now to be determined in the court of appeals solely upon the questions of law presented, except in the special case above mentioned.    See also Matter of Ross, 87 N. Y. 514 ; Davis *v.* Clark, Id.   623.

In these as in other appeals to the court of appeals, it will look into the evidence given on the trial only for the purpose of seeing whether there is competent evidence to support the conclusions of fact found by the trial court, and if it finds such evidence, it is concluded by such findings.

The court, in Matter of Haxtun, 102 N. Y. 157, held that the court of appeals must assume that the decree of a surrogate was reversed by the general term for errors of law, when the order of reversal does not certify that it was based upon errors of fact.   § 1337, Code Civ. Pro.; Matter of Cottrell, *ante.*

*Orders.*—In Williams *v.* Hernon, 3 Keyes, 99, it was held that the provision of the Code, that a judgment, reversed at a general term, shall not be deemed to have been reversed on questions of fact, unless so stated in the judgment of reversal, does not apply to orders made on special motion upon affidavits.