RODERICK BEEBE and others, Appellants, v. ERASTUS S. MEAD, Sheriff, &c., Respondent.

Where the General Term orders a new trial, both upon the law and the facts, that opens the question for the consideration of this court, whether the General Term were right in holding that the court at circuit erred on questions of fact.

The title of the consignor to paper shipped to his factors to be sold on commission does not rest in the factors, unless they have made special advances upon the credit of such shipment; or unless, by an arrangement, they are to have a lien upon all shipments for any general balance of advances previously made.

APPEAL from judgment of Supreme Court of fourth district, reversing judgment and ordering new trial. The case was tried by a judge without a jury, and the record shows that the order of new trial was made upon the facts as well as the law of the case. The action was brought to recover the value of a quantity of paper alleged to have been wrongfully taken and converted by defendant. The defendant justified under an execution against the property of one Colin H. Skinner. The judge, in his decision, found no facts other than are embraced in a general finding, "that plaintiffs were owners of the property, and entitled to the possession thereof, and that defendant wrongfully took the same;" and its value. The facts appearing on the trial were substantially these: Skinner was a paper manufacturer at Ogdensburgh, carrying on business through one Helliwell as his agent. The plaintiffs were in business in New York, selling paper on commission. In February, 1857, an arrangement was made between Helliwell and plaintiffs, by which the latter were to sell paper for Skinner on commission, and to advance three-fourths of the value on receipt of the paper, by notes at three months; their charges to be five per cent for commission, $2\frac{1}{2}$ per cent for guaranty, and $\frac{1}{2}$ per cent insurance and expenses paid for freight and cartage. Under this arrangement, on the same day, they gave directions to have made and sent, "as commencement of the common account,"

six hundred reams of various kinds of paper suitable to their market. On the 26th of March following, the plaintiffs wrote Helliwell: "Please make, next to present orders given, 100 reams, 29x43, 44 lbs., news; 200 reams, 24x36, 28 lbs., news." Prior to the 11th of April, 1857, divers parcels of paper (including a quantity of wrapping paper) had been forwarded to and received by plaintiffs to sell on commission, on which they had advanced their bills payable, and they had also sold and forwarded to Skinner merchandise to the amount of several hundred dollars, which was charged to his account on plaintiffs' books.

On the 11th of April, 1857, Helliwell, as agent for Skinner, made a draft on plaintiffs for $350 at four months after date, and procured same to be discounted by the Judson Bank, with the understanding that the bank would retain the same, and Helliwell in a short time would obtain plaintiffs' note for the same amount and with that retire the draft. Failing to do so as soon as he expected, the bank sent forward the draft, and it was presented for acceptance on the 30th of April, and acceptance refused. This draft was not accepted or paid by plaintiffs. On the 28th of April, Helliwell telegraphed plaintiffs to send a note on a shipment not then received, and plaintiffs sent him note of $300 at three months, which he used at the Judson Bank independently of the draft. Subsequently to sending this note, plaintiffs received (as appears by their statement of account sent May 21) several lots of paper, estimated to bring more than enough to cover the advances made by them on paper, including their charges thereon, but not sufficient to cover their account against Skinner, which included several hundred dollars for merchandise sold. On the 29th of April and 1st of May, Helliwell wrote plaintiffs explanatory of the draft of $350, and saying (under date of May 1st): "Your favor of 28th, enclosing note for $300, was received this morning, and for which accept thanks. By to-morrow I shall again forward 50 reams of 29x43, 44 lbs., which will place you in paper more than enough to accept draft for $350, which you will please call at the bank and do on

receipt of the paper." The fifty reams were sent and received by plaintiffs, as appears by their account.

On the 6th of May following, Helliwell shipped to plaintiffs forty-eight reams of paper of the kind mentioned in the their order of March 26, by delivering the same to the Northern Railroad at Ogdensburgh, and sending a bill of lading or receipt of the Railroad Company to plaintiff, and an invoice in the following form:

"OGDENSBURGH, N. Y., 6th May, 1857.
Messrs. BEEBE, HALL & SANDS:

Bought of C. H. SKINNER,
48 reams, 29x43, 44 lbs., 11c., news."

This invoice was not signed. Helliwell testified that it was in the form used when paper was sent on sale; and that he sent this forward in hopes it would make plaintiffs more willing to accept the $350 draft. Accompanying this invoice and receipt he wrote plaintiffs to this effect: "Inclosed please find bill of lading of 29x43, 44 lbs., which, with that already sent forward, will leave you in my debt $90, after accepting the draft which Mr. Judson sent forward, instead of retaining to be replaced by your note." He then proceeded to give a statement of paper sent forward, including that then shipped, and of the notes, including the protested draft, which showed a balance in his favor of $94.16, and added: "Under these circumstances, will you please call at the bank and accept the protested draft, and ask them to notify Mr. Judson that you have done so."

This 48 reams is the paper in question. The defendant levied on the same by virtue of the execution above named, at Rouse's Point, on the 11th of May, 1857.

*John H. Reynolds*, for the appellants.

*Alfred Edwards*, for the respondents.

DAVIS, J. Upon the finding of the judge, "that plaintiffs were owners and entitled to the possession of the paper, and defendant had wrongfully seized and taken the same," there could be no question of law for this court to consider.

The plaintiffs would be entitled to judgment of course. But the record shows that the General Term ordered a new trial both upon the law and facts of the case; and that opens to our consideration the question whether the General Term were right in holding that the court at circuit erred on questions of fact.

The circuit judge held in substance, that upon the evidence in the case, the plaintiffs were entitled to be regarded as vendees of the paper in question, or in other words, that it was sold to them, and not sent forward to be sold on commission. In this view, I think the learned judge was wrong. There was no agreement or understanding under which Helliwell was authorized to send forward the paper as upon a sale. The only business between the parties in respect to paper to be sent was that for selling on commission. The plaintiffs' order of the 29th of March will not, when viewed in the light of the circumstances under which it was given, bear the construction, that plaintiffs were ordering paper as purchasers. They were simply giving directions as to kinds, qualities and quantities wanted to meet demands in their commission business, and requesting such paper to be made and supplied; and their own account, rendered as late as the 21st of May, shows that not only the paper received before that time, but this 48 reams, which they then expected to receive, and of which they had the invoice and bill of lading in hand, were included as paper to be sold on commission. I think the General Term were right in holding that there was no evidence to justify the finding of a sale of the paper sent on the 6th of May. The only items of evidence that gave color to that idea, were the form of the invoice and the statement of Helliwell that that form was such as he used " when paper was sent on sale." But these were not controlling; and every inference to be drawn from them was explained and overcome by the facts and circumstances of the case. Besides, the parties to the transaction were on the stand, and neither of them assumed to testify that there was a sale of the paper so as to create the relation of vendor and vendees. In short, there was no point of time in respect to

this paper, when plaintiffs were bound to take the same absolutely as their own, at the price of 11 cents per pound, with no right to charge commissions, freight and charges thereon against the proceeds thereof, in Skinner's account.

To entitle plaintiffs, therefore, to hold the property as against defendant, it was essential to establish one of two propositions: first, that they had made advances specially upon the credit of this shipment; or, second, that they were entitled, by their arrangement with Skinner, to a lien for any balance of advances generally.

It is apparent that no specific advancement on this particular paper was made by plaintiffs. All the advances made by plaintiffs had been made several days before this paper was shipped. They were made on property then in hand, or of the shipment of which they had been advised. This clearly appeared from the correspondence of the parties; and it as clearly appeared that the forty-eight reams sent on the 6th May was sent, not to apply on advances made, but to induce the plaintiffs to accept the draft of $350, which they never did accept or pay. Helliwell's letter distinctly informed them of this object, and urged them to carry it out by going to the bank and accepting the dishonored draft. He accompanied the letter also with a statement showing that on receiving the forty-eight reams and accepting the draft they would still be in arrears on advances, over ninety dollars. In truth, there are no facts or circumstances in the case tending to show that any advance was ever made specifically on the credit of this shipment.

Was there any proof of an agreement by which plaintiffs were entitled to a lien for any balance of general advances? I am not able to discover any such evidence; but if there were, it is sufficient to say there was no such balance. The advances upon paper sent to be sold on commission, as shown by the account rendered by plaintiffs as late as 21st of May, were, including insurance, carting, freight and commissions, $2,066. They had received paper, which, with the forty-eight reams not then received, was estimated to bring $2,596.22; so that Helliwell was clearly right when he claimed that,

after accepting his $350 draft, there would still be a balance of advances due him.

But the account shows that there had been sold to Skinner, at various dates, from the 25th of March, 1857, to the 22d of April following, both inclusive, merchandise to the amount of $794.64; and it is necessary to bring this item into the account, to make out any balance of indebtedness from Skinner to plaintiffs. There was nothing whatever to show that these sales of merchandise were to be considered as advances on the paper to be sold on commission; nor to show that they were not made on the ordinary credit, and were, therefore, not in fact due. Nor was there a scintilla of evidence to show any agreement or understanding that plaintiffs should have any lien as commission merchants on property to be sold by them as such, for a balance of their general account for merchandise sold to Skinner. Such a lien, I suppose, is not to be presumed for the purpose of enabling them to hold property *in transitu*, and which has never, in fact, come to their hands. There was no express agreement to that effect found or proved; and this case, therefore, falls within the rule as settled by this court in *Winter* v. *Coit* (3 Seld., 288), which is to the effect that when factors receive a bill of lading of property shipped to them to sell, with a letter informing them of a draft on account of the proceeds, they acquire no lien until they have accepted the consignment upon the terms of the letter, and that they acquire no lien for a general balance before the property is actually received by them, unless in pursuance of an express agreement, or one necessarily implied from their dealings with their principal, the existence of which is a question of fact to be found by the court or jury.

I concur, therefore, in the conclusion of the General Term in this case. The judgment should be affirmed, and a final judgment ordered in favor of defendant, pursuant to the stipulation of appellants.

All the judges concurred, except PORTER, J., who, having been counsel in the case, did not sit.

Judgment affirmed.