ANNIE A. DEVLIN, Respondent, v. THE GREENWICH SAVINGS BANK et al., Appellants.

*Court of Appeals, February 24, 1891.*

1. *Appeal.   Questions of fact.*—Where the general term reverses a judgment entered upon the report of a referee, upon the facts as well as upon the law, and grants a new trial, the court of appeals must review such determination upon the questions of fact as well as the questions of law.
2. *Same.*—To justify the reversal of the findings of a referee, it must appear that such findings are against the weight of proof, or that the proofs so clearly preponderate in favor of the contrary result, that it can, with a reasonable degree of certainty, be said that the referee erred in his conclusions.
3. *Gift.   Causa mortis.*—The law does not presume in favor of a gift *causa mortis*, but requires clear and convincing proof.
4. *Witness.   Section 829.*—It is doubtful whether a witness can be permitted to testify to a conversation in his presence between the decedent and a third person relative to a gift which he seeks to establish.

Appeal from a judgment of the New York common pleas, reversing judgment in favor of defendants, entered on the report of a referee.

*Abram Kling*, for appellants.

*Wm. Henry Arnoux*, for respondent.

PECKHAM, J.—The general term of the New York common pleas reversed the judgment herein entered in favor of the defendant upon the report of the referee, upon the facts as well as upon the law and granted a new trial. The defendant appealed to this court from such order. In such case we must review the determination of the general term upon the questions of fact as well as the questions of law. Beebe *v.* Mead, 33 N. Y. 587; Code of Civil Pro., § 1338. The principles upon which such review of the facts is entered upon here have been lately stated in the case of Baird *v.* Mayor, etc., of New York, 96 N. Y. 567. We gather from that case and from those cited by the learned chief judge in the course of his opinion, that to justify the reversal of the finding of a referee or a single judge, it must appear that such findings are against the weight of proof or that the proofs so clearly preponderate in favor of a contrary result to that reached by the referee that it can with a reasonable degree of certainty be said that the trial court erred in its conclusions. As said by FOLGER, J., in Crane *v.* Baudouine, 55 N. Y. 256, the question is whether we are so certain that the referee was in error upon the facts as that we will assume to review his judgment? The fact that the trial court has the immense advantage of seeing the witnesses as they testify, and can thus observe their general intelligence, their demeanor while under examination, and the presence or absence of fairness and candor; all this always weighed very strongly with appellate courts when asked to review and reverse the findings of fact by a court or referee.

The plaintiff herein claimed to recover the amount of the deposit in the bank on the ground that her uncle, its former owner, had given it to her while he was lying ill at his house in Pennsylvania and in expectation of his death, which occurred within a short time after the alleged gift was made. In the technical language of the law she claimed the money by reason of an alleged gift *causa mortis* from the former owner.

In many of such cases there is great danger of fraud, and all the books concede that the evidence which proves the gift should be clear and convincing, strong and satisfactory. Although it may not be true that the law presumes against a gift, it certainly does not presume in its favor, but requires proof of it.    Grey *v.* Grey, 47 N. Y. 552 ; Grymes *v.* Hone, 49 Id. 17 ; Lewis *v.* Merritt, 113 Id. 386 ; 22 N. Y. State Rep. 714.    Coming to a review of the findings of fact by the referee with these rules in our mind we are compelled to say that in our opinion the general term erred in reversing such findings.    The case has been read carefully over and all the evidence on both sides has been thoroughly reviewed, and we have come to the conclusion that the referee was entirely justified in his refusal to find that any gift had been made to the plaintiff of the property in question.    It cannot be said that his findings were against the weight of evidence or that the proof clearly preponderated in favor of a contrary result.

It would serve no beneficial purpose to go over the evidence and point out in detail how in our judgment the plaintiff fails to make out a clear case.    It is enough to say that the story as told by the husband, taken as a whole, with all the accessories of place, time, circumstance and probability, is such as to warrant the referee or any other tribunal in refusing to give credence to it.

The occasion when the gift was made he describes with confidence as to the entire details.    He does so in his first direct examination and in his cross-examination, and is par-

ticular in his statement that the gift was delivered on the very same day and occasion as the bonds were given for the purpose of being sold by the witness and the proceeds returned to the owner.

Subsequently, after the case before the referee had been adjourned, the witness comes on the stand and wholly repudiates that part of his evidence, desires to correct it, and then proceeds to say that the gift was made on an entirely different occasion from that on which the bonds were produced for him to take to New York and sell, and that it was subsequent to that time, when the donor was in another bedroom in another part of the house, that the bank books were given to the wife of the witness, the present plaintiff.

The story of both husband and wife as to the almost complete silence they had maintained towards each other on this subject from the time of the gift for a period of almost fourteen years is in itself most unnatural. They lived together, and, as the evidence shows, were on the usual terms of husband and wife. And yet neither counted up the amounts of the deposits in these different banks, nor had they procured any one else to do so, and, so far as appears, neither knew what such amounts were. A careful reading of the husband's evidence does not impress me with its candor or credibility. The reason given why the action was not brought sooner is one eminently for the consideration of the trial court. It bore greatly upon the question of the integrity of the claim. The statement of Mrs. Devlin that she gave her attorney the books in 1874, and had several times since directed him to take action in regard to the matter, but could not tell within five years of the time she first spoke to him about it, and the fact that no suit was commenced, or anything done by the attorney for so many years, although the books were in his or her possession, taken with all the other facts in the case, make up a case eminently fit for careful scrutiny by the trial court. The books were in the possession of the plaintiff soon after the death of the

decedent. There is no doubt of that. But under what circumstances, and for what purpose they came into her possession, there is very grave doubt. There is corroboration of the claim of the plaintiff, slight perhaps, but still existing, in the evidence of the housekeeper. But her evidence is contradicted in some particulars by the defendant, Mrs. Farmer, and on the whole the story was one peculiarly for a trial court to pass upon, having the benefit, already alluded to, of seeing the witnesses who were testifying to this strange story.

Unless the referee committed some error in the admission or rejection of evidence, the judgment entered upon his report should be affirmed.

The plaintiff complains that the referee excluded her offer to prove by the plaintiff that she once had a conversation with one Father Carew, who was at that time the administrator of the estate of her uncle, the donor, and that Father Carew in such conversation told her that Father Fitzsimmons (the uncle and donor) told him before his death that he had given the bank books or property to the plaintiff (the witness). If Father Carew had been the witness and it had been offered to prove by him that the donor had made this admission to him, the question would have been different and the evidence perhaps admissible. As it was, the evidence was nothing but hearsay, a statement of what the witness said some one told her that some one else had told him.

There was another offer to prove that Father Carew, while he was alive and was the administrator of the donor, knew that the plaintiff had possession of these bank books. I do not think this evidence was admissible. The knowledge of Father Carew was not material. The material part of the story was the money remaining so long in the bank and no step taken to have it placed in the name of the plaintiff as owner; no claim made upon the bank for payment of any portion of the money; no step of any kind taken in regard to the deposit. These facts bore strongly upon the honesty

of the claim. The fact that Father Carew may have known of the possession of these bank books would have no tendency to explain the delay and omission above spoken of. But even if it were admissible and the referee erred in his rejection of the evidence, we are entirely clear that its rejection could by no possibility harm the plaintiff, and that there was evidence enough to fully support the finding of the referee even with all this alleged explanation in.

The counsel for plaintiff asked her, when on the stand, whether she was present at a conversation between her uncle and Father Carew. It was objected to and excluded, and an exception taken. The counsel for plaintiff did not pursue the subject. He made no offer to show any fact that was material and which occurred during such conversation. The mere fact that she was present at some conversation was wholly immaterial. We cannot see that injury resulted to the plaintiff from such ruling. It is for her to show error. To exclude evidence of her presence at a conversation between her uncle and Father Carew upon a subject not in the least connected with the issue would not be error. Whether the conversation was of that nature does not appear. Nothing appears except the bald fact stated, and so there was no error.

It is doubtful if the witness could be permitted to testify as to a conversation in her presence between her uncle and Father Carew relative to the gift she claimed. The cases of Eysaman's Will, 113 N. Y. 62; 22 N. Y. State Rep. 136; and Dunham's Will, 121 N. Y. 575; 31 N. Y. State Rep. 858, have very greatly limited the old rule in regard to such conversations.

There is no question of the statute of limitations in the case; and the knowledge or ignorance of Father Carew of the alleged gift to the plaintiff, or that the books were in her possession and she claimed them as a gift, could have no bearing on the case. The rejection of the offer to prove by the attorney that he had a conversation with Father Carew,

and the substance of such conversation, was, therefore, properly rejected. A portion of it was also clearly hearsay as to what Father Carew said the uncle had told him.

We have carefully examined each of the other objections made by the plaintiff's counsel to the rulings of the referee upon the question of admitting or rejecting evidence, and we are of the opinion there was no error committed to the injury of the plaintiff.

The exceptions to the findings of the referee are not valid, and for the reasons given in regard to the whole evidence in the case, the order of the general term reversing the judgment and granting a new trial should be reversed, and the judgment entered upon the report of the referee should be affirmed, with costs against the plaintiff.

All concur.

---

NOTE ON " TESTIMONY OF INTERESTED WITNESS AS TO TRANSACTIONS OR COMMUNICATIONS BETWEEN DECEDENT AND THIRD PERSON."

§ 829 of the Code excludes not only testimony of transactions directly between the witness and deceased and communications made by the latter to the former, but of any transaction between the deceased and others, in any portions of which the witness participated, or any conversation in his hearing though not with or addressed to him. Matter of Eyseman, 113 N. Y. 62.

The testimony of a legatee as to personal communications and transactions with the testator is not admissible on a contested proceeding for probate of a will, though such communications and transactions were not personal to herself but were only made in her presence. Matter of Bartholick, 35 St. Rep. 730; Matter of Eyseman, *ante ;* Matter of Dunham, 121 Id. 575.

In the Matter of Dunham, *ante,* probate of a codicil to a will was contested on the ground of undue influence, restraint and mental incapacity. This codicil gave to a certain legatee a legacy large in proportion to the value of the estate. A specific and residuary legatee under the will was called as a witness by the contestant, who offered to prove by him conversations and transactions of the testator with the witness and with others in his presence. All these offers were excluded as incompetent under § 829 of the Code. And it was held that such exclusion was no error, inasmuch