(86 Misc. Rep. 316)

## DANZINGER v. SEAMEN'S BANK FOR SAVINGS.

(City Court of New York, Trial Term.    June, 1914.)

1. GIFTS (§ 66*)—"GIFTS CAUSA MORTIS"—REQUISITES.

It is essential to the existence of a gift causa mortis in a savings bank account that there be an immediate existing apprehension of death, in contemplation of which the gift is made with a clearly expressed intention to give in præsenti; that the subject-matter of the gift be delivered to the donee or some one for him; that the donor die from the existing ailment without revoking the gift; that the donee make due demand on the bank for payment and establish adequate identification of the depositor, her own status as the donee, the passbook, the account and the amount of the bank's indebtedness to the donor pursuant to the account.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 135–138; Dec. Dig. § 66.*

For other definitions, see Words and Phrases, First and Second Series, Gift Causa Mortis.]

2. GIFTS (§ 82*)—GIFTS CAUSA MORTIS—PROOF OF ELEMENTS.

The proof of each of the elements of a valid gift causa mortis must be clear and convincing.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 154, 155; Dec. Dig. § 82.*]

3. GIFTS (§ 82*)—GIFTS CAUSA MORTIS—SUFFICIENCY OF EVIDENCE.

. Evidence, in an action to establish plaintiff's right to a deposit in a savings bank under a gift causa mortis, held insufficient to show that the donor, at the time of the acts upon which plaintiff relied to constitute such gift, was in an immediate existing apprehension of death, in contemplation of which the gift was made.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 154, 155; Dec. Dig. § 82.*]

Action by Celia Danzinger against the Seamen's Bank for Savings. Judgment for defendant.

Harry Schapiro, of New York City (Louis Jacobson and Joseph P. Segal, both of New York City, on the brief), for plaintiff.

Cadwalader, Wickersham & Taft, of New York City (Cornelius W. Wickersham, of New York City, of counsel), for defendant.

RANSOM, J. The plaintiff sues to establish her right to a certain deposit made by her brother, Max Danzinger, in the Seamen's Bank for Savings. The account stood in the brother's name, and he did not comply with the by-laws and rules of the defendant bank prescribing the manner in which a transfer of the account might effectively be made inter vivos. The plaintiff therefore relies on the theory that her brother made a gift causa mortis of this deposit to her. The facts of the case do not show the presence of the essential elements of a gift causa mortis, and I direct judgment for the defendant.

[1, 2] In cases involving accounts in savings banks the essential elements of proof in behalf of the alleged donee, to sustain such a gift of moneys on deposit, are the following: (1) That the donor, at the time of the acts alleged to constitute the gift causa mortis, was in an immediate existing apprehension of death—not that he had in fact no

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

chance to escape the peril or get well, but that he realized at the time that he was in grave danger of immediate or very early death. (2) That the gift was made in contemplation of the donor's impending death, and because his realization of impending dissolution prompted him to wish to make such a gift effectual—it is not enough that a transfer of custody be made pending the uncertain hazard of an effort to regain health or be rid of the menacing peril. (3) That the gift was made by a clearly expressed intention to give in præsenti, rather than an uneffectuated desire to make a testamentary disposition. (4) That the subject-matter of the gift was delivered to the donee or to some one for the donee. (5) That the donor died from the existing ailment or peril without revoking the gift. (6) That the donee made due demand upon the bank for payment. (7) That the donee establish adequate identification of the depositor, her own status as the donee, the passbook, the account, and the amount of the bank's indebtedness to the donor pursuant to the said account. Proof of each of these elements is essential (O'Brien v. Elmira Savings Bank, 99 App. Div. 76, 91 N. Y. Supp. 364; Tilford v. Bank for Savings, 31 App. Div. 565, 52 N. Y. Supp. 142; Podmore v. Dime Savings Bank, 29 Misc. Rep. 393, 60 N. Y. Supp. 533; Thornton, Gifts & Advancements, 31; 14 Am. & Eng. Ency. of Law, 1055, 1056), and the proof on these points must be "clear and convincing, strong and satisfactory" (Matter of Swade, 65 App. Div. 592, 594, 72 N. Y. Supp. 1030; Lehr v. Jones, 74 App. Div. 54, 55, 77 N. Y. Supp. 213; Devlin v. Greenwich Savings Bank, 125 N. Y. 756, 757, 26 N. E. 744).

[3] Examination of the record as to the presence or absence of the first two elements discloses that the plaintiff has not established a gift causa mortis, and it is not necessary to consider the other phases of the case. Max Danzinger was a young salesman, 21 years old, at the time of the alleged gift. He and his sister Celia, the plaintiff, had lived together in this city for some years, with no other relative here or nearby. They and two sisters and one brother had been left as orphans at an early age through the death of their parents from tuberculosis. The other children had been adopted and otherwise taken care of in the Middle West; Max and Celia continued here. They were the only children dependent on their own efforts for their support. In February, 1912, symptoms of the dread malady which had destroyed his parents appeared in Max Danzinger. On May 10, 1912, Max went to Dr. Gershell, who had been virtually foster father to both Max and Celia. Arrangements had been made by Dr. Gershell for Max, who had been under treatment at Mt. Sinai Hospital, to go that day to a sanatorium in the Adirondacks. Before saying good-by to Dr. Gershell the young man produced the bank book in question and said: "Doctor, I have a bank book here containing some money of mine deposited in a bank, and this is for my sister Celia. I want *you to take care of this,* and *if I die* you are to turn this bank book over to my sister." The young man sealed the bank book in a blank envelope; Dr. Gershell put it away, and after Max's death turned it over to the sister Celia. Dr. Gershell, who examined Max on May 10th and frequently before, testified that on that date the

state of Max Danzinger's health was "delicate." Both lungs were affected. The physician was inclined to think that on that date, taking into account all the facts as to his parentage, the young man had no reasonable chance of recovery. Asked as to what Max said as to his chances of getting well, Dr. Gershell said that Max was *"rather pessimistic"* and "downcast." Asked to state the conversation more particularly, the physician declared that Max said to him that *"he hoped he would get well, but he had doubts about it."* The young man went up to Saranac on May 10, 1912, and Dr. Gershell never saw him again. At first he was not admitted to the sanatorium, because his case was not deemed mild enough to entitle him to admission. Later he was taken in, but never regained his health, and died of tuberculosis on April 5, 1913, 11 months after the conversation with Dr. Gershell. In his intervening correspondence with Dr. Gershell, Max never mentioned the bank book. He obtained other provision for his support at Saranac, but never indicated intention to disturb the fund on deposit in the defendant bank. When Max got "very sick" Dr. Gershell told the plaintiff that he had the bank book. Max had himself told his sister what he had done with the bank book before he went to the Adirondacks. Max Danzinger left no will, and no letters of administration have been applied for. Max Danzinger left no creditors, so far as appears before me, and no other property except this bank account. It does not appear that any one is objecting to or would be defrauded or prejudiced by the turning over of this deposit to the plaintiff in pursuance of the intestate's undoubted intent.

The human appeal in this case is all on the side of the plaintiff, yet I am clear that the facts proved do not establish an effective gift to her, either inter vivos or causa mortis. Max Danzinger went to the Adirondacks, not for the purpose of dying, but for the purpose and with the hope of getting well. Dr. Gershell's custody of the book was pending the uncertain outcome of that effort to throw off the dread disease. The young man's death, 11 months later, cannot give to the alleged gift the essential elements it otherwise lacks. The defendant bank is entitled to stand upon its rights and say that it should not be compelled to pay over these moneys under such circumstances without proper security and consents or without compliance with the orderly processes of administration.

Judgment for the defendant accordingly.

Judgment accordingly.